UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OSCAR ALEXANDER DIAZ
HERNANDEZ,

    Plaintiff,

v.                                    Case No:   6:16-cv-1017-Orl-28TBS

ORANGE COUNTY, ORANGE COUNTY
CORRECTIONS DEPT., TERESA
JACOBS, DEANNE ADAMS, TERRY L.
MEYER, GABRIEL RAMOS, JERRY
HADDOCK, ROBERTA THOMAS,
ELLEN RITTEN, LT. KOROPATNICKI,
CAPT. FARRELL, LT. THOMAS, S.
COBB, COURTNEY PADGETT, NURSE
MCGEE, NURSE LEWIS, JANE
JENKINS, JOHN DOES 1 - 8, NURSE
CARDONA and NURSE MARTINEZ,

    Defendants.

## REPORT AND RECOMMENDATION

The matter comes before the Court on a motion to dismiss brought by Defendants Mayor Teresa Jacobs, Ofc. Terry L. Meyer, Lt. Deanne Adams, Ofc. Gabriel Ramos, Cpl. Jerry Haddock, Lt. Roberta R. Thomas, Lt. Jennifer A. Koropatnicki, Cpt. Sean Farrell, Ellen L. Ritten, Cpl. Sharla Cobb, Jane Jenkins, Courtney Padgett, Nurse Latasha Mcgee, Nurse Sandra Lewis, and Nurse Betty Cardona, all individually and in their official capacities (collectively, the "Individual Defendants") (Doc. 124), and a motion to dismiss brought by Defendant Orange County, Florida (the "County") (Doc. 125). Plaintiffs have filed responses to the motions (Docs. 129, 131) and the Court has allowed and considered reply briefs (Docs. 137, 142). On March 8, 2017, the motions were referred to

me for issuance of a report and recommendation. After review and consideration, I respectfully recommend that the motions be granted in part, as set forth below.

## Background

The case presents with extensive procedural history. On June 13, 2016, Plaintiffs Oscar Alexander Diaz Hernandez and his mother, Hilda Patricia Hernandez, filed their original complaint alleging claims against Orange County, the Orange County Correctional Facility, numerous correctional officers, administrators, medical personnel, and unnamed "John Does," arising out of events which occurred while Plaintiff Oscar Hernandez was a pretrial detainee at the Orange County jail (Doc. 1). In response to a show cause Order for failure to prosecute (Doc. 14), Plaintiffs sought and received an extension of time in which to serve process (Docs. 16, 18). On October 6, 2016, Plaintiffs filed their First Amended Complaint (Doc. 19).

On October 11, the Court granted another extension of time, giving Plaintiffs through October 26 to serve Defendants (Doc. 41). From October 10 through October 24, Plaintiffs filed Second, Third, Fourth, Fifth, and Sixth Amended Complaints and, on October 25, the Court entered an Order *sua sponte* striking the Second, Third, Fourth, Fifth, and Sixth Amended Complaints for failure to comply with Federal Rule of Civil Procedure 15 (Doc. 70). That same day, Plaintiffs filed Returns of Service as to Defendants Betty Cardona, Courtney Padgett, Deanne Adams, Ellen L. Ritten, Jane Jenkins, Jennifer A. Koropatnicki, Jerry Haddock, Latasha Mcgee, Roberta R. Thomas, Sanra Lewis, Sharla Cobb, Teresa Jacobs, and Terry L. Meyer (Docs. 65-69, 71-79). According to the Returns of Service, Plaintiffs served their Third Amended Complaint on these individuals (Id.).

Defendants filed a Motion to Quash Service of Process, Motion to Dismiss, and

Motion to Strike Fictitious Parties (Doc. 80). Plaintiffs filed a response (Doc. 86) in which they withdrew the John Doe Defendants, and moved for leave to amend their complaint. After the motion to quash was filed, Plaintiffs filed Returns of Service as to Sean Farrell and Gabriel Ramos, reflecting service of the Third Amended Complaint on these Defendants (Docs. 84, 85). By Order dated November 23, 2016, the Court found service was ineffective, dismissed any claim against Nurse Martinez for failure to serve, struck the claims against the unidentified John Doe Defendants, and gave Plaintiffs 14 days in which to re-serve their First Amended Complaint (the operative complaint) on the remaining Defendants (Doc. 87). Plaintiffs apparently did so,[1] and the pending motions, responses and replies followed.

On March 8, 2017, the Court issued an Order dismissing Count X of the Amended Complaint, a "Claim for Loss of Consortium, Love, Companionship, and Familial Association by Hilda Patricia Hernandez," noting that, in their response briefs to the instant motions, "Plaintiffs concede they cannot pursue Hilda Patricia Hernandez's claim for loss of filial consortium in this case" (Doc. 145). The Court also terminated Ms. Hernandez's party status (Id.).

As a result, the First Amended Complaint no longer includes claims against the John Doe defendants, Hilda Patrica Hernandez'claim for loss of consortium, or any claim against Nurse Martinez. Thus, Oscar Alexander Diaz Hernandez is the sole Plaintiff and the Court considers the motions with respect to the remaining allegations and claims in the First Amended Complaint.

---

[1] The sufficiency of the service on the County is at issue and will be discussed *infra.*

Discussion

*A. Motion to Dismiss Standard*

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. In order to survive the motion, the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In evaluating a complaint under this standard, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011). Legal conclusions devoid of any factual support are not entitled to an assumption of truth. Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 679).[2]

---

[2] The Individual Defendants contend that the Eleventh Circuit imposes a heightened pleading requirement with respect to Section 1983 cases involving individuals entitled to assert qualified immunity, citing Swann v. S. Health Partners, Inc., 388 F. 3d 834, 836-38 (11th Cir. 2004) and GJR Invs., Inc. v. Cnty. of Escambia, 132 F. 3d 1359, 1368 (11th Cir. 1998) (Doc. 124 at 5). In a more recent opinion the Eleventh Circuit has held:

> While Swann, GJR, and Danley reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree with Randall that **those cases were effectively overturned by the Iqbal court.** Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal. … **After Iqbal it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.**

Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis added and footnote omitted). See also Hoefling v. City of Miami, 811 F.3d 1271, 1276 (11th Cir. 2016) (reaffirming Randall). Defendants' counsel should be more careful in his representations to the Court regarding "the law of this circuit."

- 4 -

*B. The Allegations of the First Amended Complaint*

The First Amended Complaint alleges that on June 14, 2012, Plaintiff suffered self-inflicted injuries after hanging himself in an attempted[3] suicide, while incarcerated as a pre-trial detainee at the Orange County Correctional Facility (Doc. 19, ¶¶ 1, 4, 32-34, 75). Plaintiff avers that while in the custody of Orange County, he informed the correctional staff "on multiple occasions that he had thoughts of hurting himself and that it was his desire to commit suicide. Further, on multiple occasions correctional staff observed Plaintiff engaged in self-mutilation" (Id., ¶29). Plaintiff alleges corrections officials "knew and/or should have known" that he suffered from mental and/or emotional disability and was in need of psychological and/or psychiatric treatment and that additional precautions were necessary to ensure his safety and health. Further, Orange County knew or should have known that Plaintiff was a native Spanish speaker with a recorded inability to speak English and that he required psychological and/or psychiatric care in his native language (Id., ¶30). Despite this knowledge, the County provided Plaintiff with no psychiatric and/or psychological treatment in his native language (Id., ¶31).

On October 5, 2010, Orange County correctional staff observed that Plaintiff had pierced a pen through the top of his penis, prompting a request for a mental health evaluation and leading to Hernandez being relocated for suicide prevention (Id., ¶32). On December 11, 2010, Orange County correctional staff noted that Plaintiff should not be housed alone. At some point in 2011, Plaintiff reported to Orange County correctional

---

[3] Plaintiff affirmatively alleges that he "committed suicide" and refers to "his suicide" (Doc. 19, ¶ ¶4, 54, 63). However, he also alleges that he "almost died" (¶2), experienced "near death" (¶29), and "attempted suicide which left him in a semi-vegetative state" (¶38). Committing suicide is the intentional act of killing oneself and thus, "suicide" refers to the manner of death. A person who survives a suicide *attempt* may have been *suicidal,* but, unless he or she was successful in the attempt, he did not "commit" suicide. Despite the inconsistent allegations, the Court presumes Plaintiff is alive, although his alleged grave injuries raise competency concerns which are discussed *infra.*

- 5 -

staff that he was experiencing thoughts of self-harm and wanted to commit suicide. On January 8, 2012, Orange County correctional staff reported that Plaintiff "appeared to be upset with himself and began to display self-injurious behavior by banging his head on the wall," prompting another request for psychological observation. On April 18, 2012, Orange County correctional staff reported that Plaintiff expressed feelings of stress and a desire to harm himself (Id.).

On June 14, 2012, Orange County correctional staff, specifically Defendants Gabriel Ramos and Jerry Haddock, discovered Hernandez in possession of a razor and a spoon with a missing handle. Orange County disciplined Plaintiff by placing him in an isolation cell. Plaintiff alleges that no steps were taken to monitor him while he was in isolation, "despite his well-documented history of suicidal thoughts, suicidal ideation, and self-mutilation" (Id., ¶32).

The following conduct was transcribed by Orange County correctional staff during their review of video recordings of Plaintiff's isolation cell made on June 14, 2012 (video which had been transmitted live to the Orange County Correction's Department Command Center):

        1242–[Plaintiff] gets up and walks around

        1245–grabs sheet

        1246–stands in toilet to tie sheet to vent

        1249–gets down To Check Door and Tray

        1249–stands back in toilet to tie sheet

        1259–gets down with Sheet Tied to Neck Twitches (choking)

        1303–barely moving/still hanging

        1307–body stops moving

    1312–Officers Meyers and Ramos arrive

(Id., ¶22). "In short, OSCAR HERNANDEZ prepared and executed his suicidal hanging for over twenty-five (25) minutes while in full view [of] ORANGE COUNTY and its correctional staff without any intervention by DEFENDANTS." (Id., ¶34).

  Based on these alleged events, Plaintiff contends that the County and the remaining Individual Defendants[4] are liable under 42 U.S.C. § 1983 for the injuries he sustained while attempting suicide for, among other things, failing to properly (a) assess his mental health condition; (b) house him; (c) monitor him and his actions; and (d) intervene when he was in distress (Doc. 19, ¶¶ 50-53; 63-66; 68-72; 76-78). The First Amended Complaint purports to state a cause of action against Orange County, the Orange County Corrections Department, and the Individual Defendants "individually and collectively" for violation of Plaintiff's due process rights (Doc. 19, Count One, ¶¶ 58-73) and his Fourth Amendment right to be free from unreasonable seizures (Id., Count Two, ¶¶ 74-79).

  *C. Analysis*

  The motions to dismiss raise several grounds for dismissal, some of which overlap. I treat each, in turn.

  <u>The County's Motion to Dismiss</u>

  *1) Claims against Orange County Corrections Department*

  The County contends that, although the "Orange County Corrections Department" is named as a party (Doc. 19 at page 1 and ¶15), it is not an entity capable of being sued

---

[4] Teresa Jacobs is the Mayor of Orange County (Doc. 19, ¶16); Defendants Meyer, Adams, Ramos, Haddock, Thomas, Koropatnicki, Farrell, Ritten and Cobb are officers employed by the County (¶¶ 17-25); Defendant Jenkins was the medical director at the Department of Corrections (¶26); Defendant Padgett was an administrative supervisor there (¶27); and Defendants McGee, Lewis and Cardona were nurses at the Orange County Corrections Office (¶¶28-30).

and all claims against it are "null and void and must be dismissed with prejudice" (Doc. 125 at 2, n.1). See Monroe v. Jail, No. 2:15-CV-729-FTM-99MRM, 2015 WL 7777521, at *2 (M.D. Fla. Dec. 3, 2015) ("A correctional facility or the jail is not a proper defendant in a case brought under 42 U.S.C. § 1983."). Plaintiff does not address or contest this in his motion papers. As the County is named as a Defendant and is the real party in interest and, as there is no showing that the Orange County Corrections Department is a separate legal entity capable of being sued, I respectfully recommend that all claims against the Corrections Department be dismissed and the Corrections Department be terminated as a party.

*2) Failure to timely serve*

The County, relying on the tortured procedural history of this case and contending that it was not properly served until more than a month after the extended deadline to do so, contends that Plaintiffs failure to timely serve process warrants dismissal of the First Amended Complaint "on these grounds alone." Plaintiff denies that service was untimely. The Court need not wade into these waters. Even if the County is correct in its assertions, as the County has now been served and the issues joined on the merits, dismissal on these grounds is not warranted.

*3) The First Amended Complaint is a Shotgun Pleading*

The County contends that the remaining two counts of the First Amended Complaint should be dismissed as an impermissible "shotgun" pleading. It argues that it is "virtually impossible" to ascertain what factual allegations correspond to each claim and which claim is directed at which Defendants, and thus does not give the County adequate notice of the claims against it. I agree.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015).The most common type of shotgun pleading "is [one] containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. at 1321. That is the case here, as Plaintiff "re-allege[s] and re-affirm[s] the allegations set forth in" every paragraph prior to each count of his First Amended Complaint (Doc. 19, ¶ 58; ¶ 74). The difficulty with this approach is evident upon a review of the pleading. Plaintiff has pled a wide variety of allegations, including vague and conclusory assertions of conduct by unnamed "staff," which are incorporated in each count against all Defendants "individually and collectively." Although Plaintiff argues that the allegations are not designed to confuse, and appropriately apprise the County "of the systemic failures in Defendant's facility ultimately leading to the deprivation of [Plaintiff's] constitutional rights" (Doc. 131 at 9), the law with respect to the County's liability under Section 1983 is not as broad as Plaintiff would have it.

"[T]o sustain a 1983 action, a plaintiff must make a *prima facie* showing that the act or omission of a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Cannon v. Taylor, 782 F.2d 947, 949 (11th Cir.1986) (citing Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). As summarized by the Eleventh Circuit:

> Although the Supreme Court has held that counties (and other local government entities) are "persons" within the scope of § 1983, and subject to liability, **[a plaintiff] cannot rely upon the**

> theory of respondeat superior to hold the County liable.[fn omitted] See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); Pembaur v. Cincinatti, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). **A county does not incur § 1983 liability for injuries caused solely by its employees.** Monell, 436 U.S. at 694, 98 S.Ct. 2018. Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability and causation. Bd. of County Com'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. See Canton, 489 U.S. at 388, 109 S.Ct. 1197.

McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (emphasis added); see also Nettles v. City of Leesburg--Police Dep't, 415 F. App'x 116, 121-22 (11th Cir. 2010). Here, Plaintiff does not allege any particular policy or custom that resulted in violation of his rights, but instead incorporates a wide variety of different reports and incidents upon which he attempts to build an inference of liability, and contends that discovery will flush out the exact custom or policy later. I find this insufficient. The County is entitled to adequate notice of the specific claim or claims against it, and the grounds upon which that claim rests. As that standard is not met here, I respectfully recommend that the First Amended Complaint be dismissed, as further set forth herein.

  The remaining arguments in the County's motion pertain to the since dismissed claim of Hilda Patricia Hernandez. The motion to dismiss her claim for loss of consortium and to strike the claim for an award of punitive damages pertaining to that state law claim

are therefore moot.

### The Individual Defendants' Motion to Dismiss

*1) The First Amended Complaint is a Shotgun Pleading*

For the reasons discussed above, I conclude that the First Amended Complaint is, indeed, a shotgun pleading and must be dismissed.[5] Dismissal is especially appropriate in view of the other arguments made by the Individual Defendants, discussed below.

*2) Claims against the Individual Defendants in their official capacity are duplicative*

Plaintiff has sued the Defendants "individually and in their official capacities." The Individual Defendants seek to dismiss the claims against them in their official capacity as duplicative of the claims against their employer – the County. The Supreme Court has noted that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690, n. 55. So long as the government entity receives notice and an opportunity to respond, a suit against a person in their official capacity is to be treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("It is *not* a suit against the official personally, for the real party in interest is the entity."). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." Busby v. City of Orlando, 931 F.2d 764, 776 (11th

---

[5] As Plaintiff complains that "Defendants cite no case law that shotgun pleadings are subject to dismissal," (Doc. 129 at 4), the Court will oblige him. See Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997) (shotgun complaints are "altogether unacceptable" and "the district court, acting on its own initiative, should have stricken appellants' complaints and instructed counsel to replead their cases"); Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1125-28 (11th Cir. 2014) ("nothing should stop District Courts from demanding, on their own initiative, that the parties replead the case"); Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998) ("If the trial judge does not quickly demand repleader, all is lost ...").

Cir. 1991) (affirming district court's decision to grant directed verdict to individuals sued in their official capacity because the City remained as a defendant). I find the official capacity claims are duplicative and should be dismissed with prejudice, as long as the County remains the real party in interest.

### 3) Qualified Immunity and Section 1983

Plaintiff has pled liability against *all* Defendants "individually and collectively" for what he claims are violations of his Fourth and Fourteenth Amendment rights, addressable under 42 U.S.C. § 1983. The Individual Defendants assert that they are each entitled to qualified immunity and, in any event, the First Amended Complaint fails to state a cause of action for deliberate indifference under §1983. Upon review, I find that the First Amended Complaint does not contain sufficient allegations to evaluate the claims and this defense, and should therefore be dismissed.

"Government officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir.1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The analysis focuses on two questions: "first, ... whether there is 'an underlying constitutional violation,' [and] second, ... whether the law the public official is alleged to have violated was 'clearly established' at the time of incidents giving rise to the suit." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (internal citations omitted). In the context of a prison suicide (or attempt), the analysis is as follows:

> "In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail

> official displayed *deliberate indifference* to the prisoner's taking of his own life." Edwards v. Gilbert, 867 F.2d 1271, 1274-75 (11th Cir.1989) (emphasis added) (quotation omitted). "In addition, once the defense of qualified immunity is raised, the plaintiff must persuade the court that the law was clearly established that the defendant's conduct in the circumstances amounted to deliberate indifference." Id. at 1275 (quotation omitted).
>
>> [D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. Therefore, summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge, as follows: since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.
>
> McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999) (alterations adopted) (quotation marks and citations omitted). "Absent knowledge of a detainee's suicidal tendencies, failure to prevent suicide has never been held to constitute deliberate indifference." Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir.1990) (per curiam).

Jackson v. West, 787 F.3d 1345, 1353 (11th Cir. 2015) (holding that an officer is liable under § 1983 for the suicide of an inmate only if he had subjective knowledge of a serious risk that the inmate would commit suicide and he disregarded that known risk). Because Plaintiff has pled his claims in shotgun fashion, it is impossible to ascertain which acts are plausibly attributable to which Defendant; nor has Plaintiff pled sufficient plausible facts to support a conclusion that *each* Defendant had subjective knowledge of a risk of serious harm.[6] See Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir.2008) ("Each individual

---

[6] Although the First Amended Complaint contains some specific allegations against Defendants Ramos and Haddock, the majority of allegations pertaining to the Individual Defendants are either bald conclusions (See, *e.g.,* Doc. 19, ¶34), or directed towards unnamed "correctional staff" (Id., ¶32).

- 13 -

Defendant must be judged separately and on the basis of what that person knows."). Although the Individual Defendants urge the Court to analyze the merits of the case and find that they are entitled to qualified immunity, that is putting the cart before the horse. Absent an appropriate statement of the claim or claims against each Defendant, the Court cannot perform the required analysis. For this reason I respectfully recommend that the First Amended Complaint be dismissed for failure to state a claim.

### 4) *Eighth Amendment and Pre-trial Detainees*

In Count One Plaintiff alleges, in the alternative, that the Count One Defendants[7] "actions and/or omissions violated Oscar Hernandez's Eighth Amendment rights" (Doc. 19, ¶73). The Individual Defendants move to dismiss this alternative claim, correctly noting that the Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pre-trial detainees. See Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) ("As a pre-trial detainee, [Craig]'s rights exist[ed] under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment," quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir.2009) (internal citation omitted).) Plaintiff does not dispute that the Eighth Amendment does not apply to pre-trial detainees but asks for a stipulation by Defendants that Plaintiff was a pre-trial detainee to "ameliorate the need" for that alternative pleading (Doc. 129 at 15). No stipulation is shown to be necessary or appropriate here. Plaintiff is the master of his complaint and he has affirmatively pled that he was a pre-trial detainee. As he did not plead his status in the alternative, he is limited to the remedy based on that status. Plaintiff's alternative claim of Eighth Amendment

---

[7] Considering the shotgun nature of the First Amended Complaint and the numerous references to "Defendants, individually and collectively" throughout the pleading, it is unclear if Count One is meant to pertain solely to the 13 named Defendants in paragraph 59. This is yet another reason to require Plaintiff to replead.

violations should be dismissed.

### 5) Count Two is not a Fourth Amendment Claim

In Count Two, Plaintiff purports to state a cause of action for violation of his Fourth Amendment rights (Doc. 19, ¶¶74-79). He alleges that Defendants, individually and collectively, violated his right "to be free of unreasonable seizures" (1) by failing to provide for proper and adequate medical and psychological care (Id. ¶76); (2) by placing him in isolation and/or protective custody without reasonable and appropriate suicide prevention controls (Id. ¶77); and (3) by failing to properly supervise and observe him while in isolation and/or protective custody (Id. ¶78).

The Individual Defendants correctly note that jail suicide cases are analogous to those involving failure to provide medical care and are properly analyzed under the Fourteenth Amendment, rather than the Fourth Amendment. See Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990) ("jail suicides are analogous to the failure to provide medical care"); Boynton v. City of Tallahassee, No. 4:14CV292-MW/CAS, 2015 WL 12942212, at *1 (N.D. Fla. May 12, 2015) ("A failure-to-treat claim sounds under the Fourteenth Amendment"); Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032-33 (11th Cir. 1987) ("If [the right to medical treatment and services by a state or municipality] exists at all, it must derive from the fourteenth amendment's due process clause, which forbids a state to deprive anyone of life, liberty or property without due process of law.").

In his response Plaintiff acknowledges, as he must, that the Eleventh Circuit applies a deliberate indifference and subjective awareness standard to failure to protect claims made by pre-trial detainees, and analyzes that standard under the Fourteenth Amendment (Doc. 129 at 15). Nonetheless, Plaintiff contends that the appropriate

standard is an *objective* one, citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2470, 192 L. Ed. 2d 416 (2015) (applying objective standard to a pre-trial detainee's claim for excessive force) and Castro v. City of Los Angeles, 833 F. 3d 1060 (9th Cir. 2016) (applying an objective standard in a Fourteenth Amendment failure to protect claim arising from a beating from another inmate). Although Kingsley was a Fourteenth Amendment case, Plaintiff points to Justice Scalia's dissent, which recognizes a Fourth Amendment prohibition against excessive force when it makes a search or seizure "unreasonable," but suggested that Kingsley "forfeited any argument under the Fourth Amendment by failing to raise it below." Kingsley, 135 S. Ct. 2466, 2477, 192 L. Ed. 2d 416 (2015), *J. Scalia dissenting.* Plaintiff argues that, as it is "not entirely clear" whether seizing a person without providing objectively reasonable medical care is tantamount to an unreasonable seizure, he asserted his Fourth Amendment claim "out of an abundance of caution" to ensure that the objective standard discussed in KingIsey was properly raised. Noting that Castro is subject to a petition for writ of certiorari to the Supreme Court and "in light of the uncertainty in the Supreme Court's future composition," (Doc. 129 at 16-17), Plaintiff urges that his Fourth Amendment claim be allowed to stand "particularly at this time." I cannot recommend accommodating Plaintiff's request.

Kingsley is not a prison suicide case, nor is Castro. More importantly, although it is possible that the Supreme Court will grant the writ and extend the objective standard to all alleged failure to protect pre-trial detainee claims, including prisoner suicide claims, such a prospective extension is not likely to be determinative here. As the Southern District of Georgia has observed:

> The Eleventh Circuit has yet to issue a ruling on the proper standard to employ in analyzing a pretrial detainee's deliberate indifference claim in light of the Kingsley decision.

- 16 -

> Because of this, the Court applies the standards in place at the time giving rise to the events set forth in Plaintiff's Complaint. … Further, because the standard applicable at the time giving rise to Plaintiff's Complaint was the Eighth Amendment's deliberate indifference standard, Defendants would likely be entitled to qualified immunity, as Kingsley was not the clearly established law at that time. Ross v. Corr. Officers John & Jane Does 1-5, 610 F. App'x 75, 77 n.1 (2d Cir. 2015) ("Because our focus, in analyzing whether qualified immunity applies, is on whether the right asserted by Ross was clearly established at the time of the alleged violation, we need not address Kingsley's possible implications for deliberate indifference claims brought by pre-trial detainees."); see also Bilal v. Geo Care, LLC, Case No. 2:14-cv-422-FtM-38MRM, 2016 WL 345514, at * 6 (M.D. Fla. Jan. 28, 2016) (recognizing the Kingsley decision and stating, "[i]n the context of conditions of confinement cases, the Eighth Amendment is concerned with deprivations of essentials, food, medical care, or sanitation or other conditions intolerable for prison confinement. ... The relevant state of mind for a condition claim is deliberate indifference.") (citations omitted).

Thomley v. Bennett, No. 5:14-CV-73, 2016 WL 498436, at *7 (S.D. Ga. Feb. 8, 2016), *report and recommendation adopted*, No. 5:14-CV-73, 2016 WL 1060316 (S.D. Ga. Mar. 14, 2016); see also Smith v. Terry, No. 2:13-CV-216-WHA, 2016 WL 4942066, at *3 (M.D. Ala. Aug. 15, 2016), *report and recommendation adopted*, No. 2:13-CV-216-WHA, 2016 WL 4923506 (M.D. Ala. Sept. 14, 2016) (collecting post-Kingsley cases and finding that "the vast majority of federal courts, including the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees challenging medical treatment and other conditions"); McBride v. Houston Cty. Health Care Auth., 658 F. App'x 991, 996 (11th Cir. 2016) (post-Kingsley case, jail detainee claiming deliberate indifference to a serious medical need in violation of Fourteenth Amendment, finding: "To prevail on a § 1983 claim alleging a violation of that right, a plaintiff must satisfy both an objective and a subjective inquiry"); Shuford v. Conway, 666 F. App'x 811, 817 (11th Cir. 2016) (applying objective standard, but

observing that "<u>Kingsley's</u> 2015 ruling requiring a pretrial detainee to show that the force purposely or knowingly used against him was objectively unreasonable, came after the incidents that are the subject of this suit, so it does not govern our "clearly-established" analysis here."). Accordingly, I respectfully recommend that Plaintiff's Fourth Amendment claim be dismissed.

The remaining arguments in the Individual Defendants' motion pertain to the dismissed claim of Hilda Patricia Hernandez and are therefore moot.

For the reasons set forth above, I respectfully recommend that the First Amended Complaint be dismissed.

<u>Remaining Matters</u>

If my recommendations are adopted, the First Amended Complaint will be dismissed with limited leave to replead. Although raised only tangentially by the parties, Plaintiff's competency to bring suit is a concern. While the details of his health are not provided, Plaintiff has alleged affirmatively that he is in a "semi-vegetative state" (Doc. 19, ¶38). The Court assumes this condition renders him, for present purposes, incompetent to prosecute this action.

Pursuant to FED. R. CIV. P. 17(c), certain representatives (a general guardian, a committee, a conservator, or a like fiduciary) may sue on behalf of an incompetent person. An incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. As Plaintiff is not a minor, he has no natural legal guardian, and the Court is without knowledge as to whether a formal guardian has been appointed. While Plaintiff could sue via next friend, next friend status is not automatic. <u>Ford v. Haley</u>, 195 F.3d 603, 624 (11th Cir. 1999). In the Eleventh Circuit, a next friend: (1) must "prove that the real party in interest cannot pursue his own

cause due to some disability ... and (2) must show some relationship or other evidence that demonstrates the next friend is truly dedicated to the interests of the real party in interest." Gonzalez ex rel. Gonzalez v. Reno, 86 F. Supp. 2d 1167, 1185 (S.D. Fla.), *aff'd sub nom*. Gonzalez v. Reno, 212 F.3d 1338 (11th Cir. 2000)(internal citations omitted).

Given the seriousness of the allegations made concerning Plaintiff's health and the importance of the matter at bar, it is recommended that Plaintiff proceed in this matter only through the services of an appropriate representative. If a nominee for next friend cannot be found, Plaintiff's counsel may seek the Court's assistance in appointing a guardian ad litem.

## Recommendation

For the foregoing reasons I respectfully recommend that the motions to dismiss be granted, in part, as follows:

1. The First Amended Complaint should be dismissed, without prejudice; however,

2. All claims against the Corrections Department should be dismissed with prejudice, and the Corrections Department terminated as a party;

3. All claims against the Individual Defendants in their official capacity should be dismissed with prejudice, as the County is the real party in interest;

4. All Eighth Amendment claims should be dismissed with prejudice; and

5. Plaintiff's Fourth Amendment claim in Count Two should be dismissed without prejudice to re-pleading, if appropriate, as a Fourteenth Amendment claim.

It is further recommended that Plaintiff be given a final opportunity to state a cognizable claim, subject to the limitations above, and that he be directed to proceed through a next friend, authorized representative, or, if necessary, appointment of a guardian ad litem.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 20, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record