# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NIDIA PATRICIA HERNANDEZ,**
**as Next Friend to OSCAR ALEXANDER DIAZ**
**HERNANDEZ**
     *Plaintiff*

**VS.**                                    **CASE NO. 6:16-cv-1017-Orl-JA-TBS**

**ORANGE COUNTY, FLORIDA,**
**Mayor TERESA JACOBS,**
**Captain SEAN FARRELL,**
**Lieutenants JENNIFER KOROPATNICKI,**
**ROBERTA THOMAS, DEANNE ADAMS,**
**Corporal JERRY HADDOCK,**
**Officers GABRIEL RAMOS, TERRY L. MEYER,**
**Classifications Supervisor ELLEN RITTEN,**
**Corrections Administrator COURTNEY PADGETT,**
**Nurses BETTY CARDONA, LATASHA MCGEE**
**and SANDRA LEWIS, and**
**Medical Director JANE JENKINS**
     *Defendants*

_____

## PLAINTIFFS' SECOND AMENDED COMPLAINT & JURY DEMAND

Comes now, PLAINTIFF, NIDIA PATRICIA HERNANDEZ, as Next Friend to OSCAR

ALEXANDER DIAZ HERNANDEZ (hereinafter OSCAR HERNANDEZ), and files this, the

**SECOND AMENDED COMPLAINT** against the above listed Defendants, for damages

associated with OSCAR HERNANDEZ's injuries, the deprivation of OSCAR HERNANDEZ's

constitutional rights under the Fourth and Fourteenth Amendments to the United States

Constitution, OSCAR HERNANDEZ's suffering and injuries while incarcerated, damages to

compensate Plaintiff seeks both compensatory and punitive damages. In support Plaintiff

alleges as follows:

## I.    NATURE OF THIS ACTION

1.    This is an action arising under 42 U.S.C. § 1983 and under *Monell* for damages that Oscar Hernandez sustained as a result of his attempted suicide on June 14, 2012 while a pretrial detainee at the Orange County Correctional Center in Orangey County, Florida. At the inception of his detention, Oscar Hernandez suffered from depression and anxiety disorders, and was mentally ill. During the course of his detention, Oscar Hernandez remained mentally ill, made numerous statements to Defendants regarding suicidal ideation, and engaged in repeated acts of self-harm. Despite their knowledge that Oscar Hernandez was at high risk of attempting and/or committing suicide, Defendants failed to provide him with medical care, failed to monitor him, and, on June 14, 2012, placed Oscar Hernandez in an isolation cell where Oscar Hernandez, in full view of a video camera, spent more than thirty (30) minutes preparing and executing his attempted suicide. As a result of Orange County's unconstitutional customs, policies, and practices, and the deliberate indifference of the named individual Defendants to Oscar Hernandez' medical needs, Mr. Hernandez sustained permanent and disabling injuries. Oscar Hernandez's injuries were the proximate result of Defendants' actions and/or omissions, all in violation of the rights guaranteed by the Fourteenth Amendment to Constitution of the United States of America.

## II.    PRELIMINARY STATEMENT

2.    This is a civil action arising under 42 U.S.C. § 1983 and the United States Constitution to redress the deprivation by the Defendants, acting under color of state law, of certain rights, privileges, and immunities secured to Oscar Hernandez by the United States Constitution.

3.    This suit seeks an end to individual defendants' unconstitutional and unlawful practices of Defendants and monetary relief for OSCAR HERNANDEZ's wrongful injuries

and associated harm, along with other damages against Defendants, including, but not limited to, reasonable attorneys' fees as authorized by 42 U.S.C. § 1988.

### III. JURISDICTION & VENUE

4.      Jurisdiction over Plaintiff's constitutional claims for which redress is provided by 42 U.S.C. § 1983 is conferred on this Court by 28 U.S.C. § 1342(a)(3). Federal question jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because this action arises under the United States Constitution and laws and statutes of the Federal government passed under the authority thereof.

5.      The Court has personal jurisdiction over Defendants because the substantial part of the alleged incidents, actions, and facts resulting in the injuries of Oscar Hernandez occurred within the confines of this Court's jurisdiction at the Orange County Correctional Facility located in Orange County, Florida causing Oscar Hernandez's injuries.

6.      Venue is proper in the Orlando Division, Middle District of Florida, under 28 U.S.C. § 1391(a)(2) because all or a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

### IV. CONDITIONS PRECEDENT

7.      All conditions precedent have been performed or have occurred.

### V. PARTIES

**Plaintiffs:**

8.      OSCAR HERNANDEZ, is a resident of Honduras, and was the principal victim in this case.

**Defendants:**

9 .      Defendant, ORANGE COUNTY, FLORIDA is a county located in the State of Florida. ORANGE COUNTY, FLORIDA has been served.

10. Defendant TERESA JACOBS was, on the date of this incident, the mayor and chief officer of ORANGE COUNTY, FLORIDA. TERESA JACOBS has been served.

11. Defendant TERRY L. MEYER was, on the date of this incident, an officer employed by ORANGE COUNTY, FLORIDA. TERRY MEYER has been served.

12. Defendant DEANNE ADAMS was, on the date of this incident, a lieutenant employed by ORANGE COUNTY, FLORIDA. DEANNE ADAMS has been served.

13. Defendant GABRIEL RAMOS was, on the date of this incident, an officer employed by ORANGE COUNTY, FLORIDA. GABRIEL RAMOS has been served.

14. Defendant JERRY HADDOCK was, at the time of this incident, a corporal employed by ORANGE COUNTY, FLORIDA. JERRY HADDOCK has been served.

15. Defendant ROBERTA R. THOMAS was, on the date of this incident, a lieutenant employed by ORANGE COUNTY, FLORIDA. ROBERTA THOMAS has been served.

16. Defendant JENNIFER A. KOROPATNICKI was, on the date of this incident, a lieutenant employed by ORANGE COUNTY, FLORIDA. JENNIFER KOROPATNICKI has been served.

17. Defendant SEAN FARRELL was, on the date of this incident, a captain employed by ORANGE COUNTY, FLORIDA. SEAN FARRELL has been served.

18. Defendant ELLEN L. RITTEN was, on the date of this incident, a classifications supervisor employed by ORANGE COUNTY, FLORIDA. ELLEN RITTEN has been served.

19. Defendant JANE JENKINS was, on the date of this incident, the medical director employed by ORANGE COUNTY, FLORIDA. JANE JENKINS has been served.

20. Defendant COURTNEY PADGETT was, on the date of this incident, the administrative supervisor employed by ORANGE COUNTY, FLORIDA. COURTNEY PADGETT has been served.

21.     Defendant BETTY CARDONA was, on the date of this incident, a nurse employed by ORANGE COUNTY, FLORIDA. BETTY CARDONA has been served.

22.     Defendant SANDRA LEWIS was, on the date of this incident, a nurse employed by ORANGE COUNTY, FLORIDA. SANDRA LEWIS has been served.

23.     Defendant LATASHA MCGEE was, on the date of this incident, a nurse employed by ORANGE COUNTY, FLORIDA. LATASHA MCGEE has been served.

## VI.     FACTS

24.     OSCAR HERNANDEZ was taken into custody by ORANGE COUNTY on or around November 18, 2009. Mr. Hernandez remained in pre-trial detention and the custody of ORANGE COUNTY for approximately three (3) years until on or around June 14, 2012, OSCAR HERNANDEZ attempted suicide. At no time during his detention was OSCAR HERNANDEZ convicted of any crime and, ultimately, the charges against OSCAR HERNANDEZ were dropped.

25.     While in the custody of ORANGE COUNTY, FLORIDA, OSCAR HERNANDEZ informed ORANGE COUNTY and its correctional staff on multiple occasions that he had thoughts of hurting himself and that it was his desire to commit suicide. Further, on multiple occasions ORANGE COUNTY and its correctional staff observed OSCAR HERNANDEZ engaged in self-mutilation.

26.     On January 20, 2010, OSCAR HERNANDEZ reported that he was thinking about hurting himself, prompting a medical evaluation. On or about October 2, 2010, ORANGE COUNTY correctional staff drafted a report, placed in OSCAR HERNANDEZ' file, recording OSCAR HERNANDEZ' inability to speak English and that he was in fear of his life. By a separate report, also placed in OSCAR HERNANDEZ' file, ORANGE COUNTY' FLORIDA correction staff recorded OSCAR HERNANDEZ' request for protective custody, that OSCAR

HERNANDEZ was in fear of his life, and designated OSCAR HERNANDEZ as "DO NOT HOUSE ALONE." On October 5, 2010, ORANGE COUNTY correctional staff observed that OSCAR HERNANDEZ had pierced a pen through the top of his penis, prompting a request for a mental health evaluation and leading to OSCAR HERNANDEZ being relocated for suicide prevention. On October 11, 2010, ORANGE COUNTY, FLORIDA's correction staff reported in a memorandum, transmitted to ORANGE COUNTY, FLORIDA's Correctional Department Major Adkins and placed in OSCAR HERNANDEZ' file, that OSCAR HERNANDEZ made a request for protective custody on October 5, 2010 and that OSCAR HERNANDEZ does not understand English and required a translator. On December 11, 2010, ORANGE COUNTY correctional staff again noted that OSCAR HERNANDEZ should not be housed alone.

27.     On February 1, 2011, OSCAR HERNANDEZ informed ORANGE COUNTY, FLORIDA that "I want to kill myself." Sometime later in 2011, OSCAR HERNANDEZ reported to ORANGE COUNTY correctional staff that he was experiencing thoughts of self-harm and wanted to commit suicide. On August 7, 2011, ORANGE COUNTY, FLORIDA correctional officers were required to restrain OSCAR HERNANDEZ to keep him from throwing himself off the top tier railings in an attempt to engage in self-harm. On September 2, 2011, OSCAR HERNANDEZ made another request for protective custody, which, along with a second notation that OSCAR HERNANDEZ does not understand English, was recorded in a memorandum, transmitted to ORANGE COUNTY, FLORIDA's Administrative Supervisor, COURTNEY PADGETT, and placed in OSCAR HERNANDEZ' file.

28.     On January 8, 2012, ORANGE COUNTY correctional staff reported that OSCAR HERNANDEZ "appeared to be upset with himself and began to display self-injurious behavior by banging his head on the wall," prompting another request for psychological observation. OSCAR HERNANDEZ was moved to isolation and, on January 11, 2012, asked to be moved out

of isolation, reporting to ORANGE COUNTY, FLORIDA, specifically Officer GABRIEL RAMOS, that he is claustrophobic. On April 18, 2012, following an incident involving Officer TERRY MEYER and Officer GABRIEL RAMOS, OSCAR HERNANDEZ reported feelings of stress and a desire to harm himself. On June 13, 2012, ORANGE COUNTY, FLORIDA Officer GABRIEL RAMOS, with the authorization of ORANGE COUNTY, FLORIDA supervisors, including Corporal JERRY HADDOCK, moved OSCAR HERNANDEZ into an isolation cell and OSCAR HERNANDEZ again reported to ORANGE COUNTY, FLORIDA, including Officer GABRIAL RAMOS, that he could not be housed in isolation and was experiencing feelings of claustrophobia. All of the above incidents were recorded and noted in OSCAR HERNADEZ' file and, on information and belief, known to Defendants Captain SEAN FARRELL, Lieutenants JENNIFER KOROPATNICKI, ROBERTA THOMAS, and DEANNE ADAMS, Corporal JERRY HADDOCK, Officers TERRY MEYER and GABRIEL RAMOS, Classifications Supervisor ELLEN RITTEN, Administrator COURTNEY PADGETT, Medical Director JANE JENKINS, and Nurses BETTY CARDONA, LATASHA MCGEE, and SANDRA LEWIS.

29. On June 14, 2012, ORANGE COUNTY correctional staff, specifically Defendants GABRIEL RAMOS and JERRY HADDOCK discovered OSCAR HERNADEZ in possession of a razor and a spoon with a missing handle, which OSCAR HERNANDEZ could use to harm himself. Captain SEAN FARRELL, Lieutenants JENNIFER KOROPATNICKI and ROBERTA THOMAS, Corporal JERRY HADDOCK, and Officers GABRIEL RAMOS and TERRY MEYER, who were on duty, disciplined OSCAR HERNANDEZ and placed him back in an isolation cell, despite the fact that ORANGE COUNTY records known to these Defendants clearly stated that Mr. HERNANDEZ was not to be housed alone, experienced thoughts of self-

harm, had carried out prior attempts to harm and mutilate himself, and that he experienced claustrophobia while housed in isolation.

30.     The isolation cell in which Mr. HERNANDEZ was placed on or about June 14, 2012 was equipped with video camera surveillance which transmitted a live feed to the Command Center of the ORANGE COUNTY Corrections Department. On information and belief, the video feed transmitted to the ORANGE COUNTY Corrections Department Command Center is visible to ORANGE COUNTY's on-duty correctional staff. CAPTAIN SEAN FARRELL, LIEUTENANT JENNIFER KOROPATNICKI, LIEUTENANT ROBERTA THOMAS, CORPORAL JERRY HADDOCK, OFFICER TERRY MEYER, OFFICER GABRIEL ROMAS, MEDICAL DIRECTOR JANE JENKINS, NURSE BETTY CARDONA, NURSE LATASHA MCGEE, and NURSE SANDRA LEWIS were on duty on the day and at the time of OSCAR HERNANDEZ' attempted suicide. Despite OSCAR HERNANDEZ' well-documented history of suicidal thoughts, suicidal ideation, and self-mutilation, and despite the fact that SEAN FARRELL, JENNIFER KOROPATNICKI, ROBERTA THOMAS, JERRY HADDOCK, GABRIEL RAMOS, and TERRY MEYER knew that Mr. Hernandez required observation for his own safety by placing him in a cell equipped with video surveillance, ORANGE COUNTY and its on-duty staff either took no steps to monitor OSCAR HERNANDEZ while in isolation or watched as OSCAR HERNANDEZ prepared and attempted to commit suicide over the course of almost thirty (30) minutes, without intervening, in deliberate indifference to OSCAR HERNANDEZ' known high risk of suicide.

31.     On June 14, 2012, after being placed in an isolation cell, the following conduct was transcribed by Defendant ROBERTA THOMAS based upon the video recording transmitted to the ORANGE COUNTY Corrections Department Command Center from OSCAR

HERNANDEZ' cell (video which had been transmitted live to the ORANGE COUNTY Correction's Department Command Center).

1242-[OSCAR HERNANDEZ] gets up and walks around

1245-grabs sheet

1246-stands in toilet to tie sheet to vent

1249-gets down To Check Door and Tray

1249-stands back in toilet to tie sheet

1259 - gets down with Sheet Tied to Neck Twitches (choking)

1303 - barely moving/still hanging

1307 - body stops moving

1312 -Officers MEYERS and RAMOS arrive….

1313 -Cpl. HADDOCK arrives…

1315 -Medical arrives: Martinez, CARDONA

1316 –Medical Nurses MCGEE and LEWIS arrives…

1319 – Lt. KOROPATNICKI advises Cpt. FARRELL & Lt. THOMAS…

1323 –Inmate DIAZHERNANDEZ started gasping really loud…

1324 –JANE JENKINS Arrives (Medical Director)…

1336 –Fire Rescue departed from compound…

1428 – Lt. KOROPATNICKI called Cpt. Warren and left a voice message

1433 – Lt. THOMAS called John Petrielli from Risk Management and left a voice message.

1440 -Lt. THOMAS called Legal Advisor Roberta Alphonso and left a voice message

1442 –Lt. THOMAS notified PIO Allan Moore.

1444 –Lt. KOROPATNICKI called Classification Supervisor ELLEN RITTEN and left a voice message.

32.     In short, OSCAR HERNANDEZ prepared and executed his suicidal hanging for over twenty-five (25) minutes while in full view ORANGE COUNTY and its on-duty correctional staff without any intervention by DEFENDANTS. ORANGE COUNTY's reports of the incident further document its on-duty correctional staff, specifically, Officer GABRIEL RAMOS, Officer TERRY MEYER, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, and, on information and belief, Captain SEAN FARRELL, Medical Director JANE JENKINS, and Nurses BETTY CARDONA, LATASHA MCGEE, and SANDRA LEWIS', improper monitoring of OSCAR HERNANDEZ, as well as insufficient and improper emergency medical treatment administered by MEYER, HADDOCK, CARDONA, MCGEE and LEWIS.

## VII.     GENERAL ALLEGATIONS

33.     Due to the documented nature and severity of OSCAR HERNANDEZ's condition, DEFENDANTS demonstrated deliberate indifference to the medical needs of OSCAR HERNANDEZ;

34.     Defendants failed to properly assess OSCAR HERNANDEZ's condition;

35.     Defendants failed to properly house OSCAR HERNANDEZ;

36.     Defendants failed to properly monitor OSCAR HERNANDEZ and his actions;

37.     Defendants failed to intervene when OSCAR HERNANDEZ was in distress;

38.     Although the OSCAR HERNANDEZ could not speak English well, he was not provided with a Spanish interpreter or any other means with which to communicate his condition. By not granting OSCAR HERNANDEZ proper medical treatment and by not supplying proper supervision to OSCAR HERNANDEZ despite his fragile state, the

Defendants demonstrated a deliberate indifference to the conditions leading directly to his suicide, denied him equal protection of law, and subjected him to an unreasonable seizure of his person;

39.     Additionally, by allowing OSCAR HERNANDEZ despite his medical history and clearly deteriorating condition, the Defendants demonstrated complete indifference to the obvious severity of OSCAR HERNANDEZ's condition and signs of self-destructive behavior;

40.     OSCAR HERNANDEZ's injuries could have been prevented had he been given his proper medication, given proper visitation rights with doctors and his family, properly monitored throughout his deteriorating condition, and, when necessary, placed on suicide watch;

41.     OSCAR HERNANDEZ was injured as a result of a number of omissions and actions of Defendants, individually and jointly, by not being properly trained, failure to adequately monitor inmates and observe obvious self-destructive tendencies, not providing proper medical care to the OSCAR HERNANDEZ, failing to properly monitor OSCAR HERNANDEZ given his known medical and mental health history, and failure by Defendants to take prompt action when the OSCAR HERNANDEZ attempted to kill himself.

## VIII.     COUNT ONE—DEFENDANTS CAPTAIN SEAN FARRELL, LIEUTENANT JENNIFER KOROPATNIKI, LIEUTENANT ROBERTA THOMAS, CORPORAL JERRY HADDOCK, OFFICER GABRIEL RAMOS, OFFICER TERRY MEYER, MEDICAL DIRECTOR JANE JENKINS, AND NURSES BETTY CARDONA, LATASHA MCGEE AND SANDRA LEWIS' VIOLATION OF OSCAR HERNANDEZ' DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

42.     During Oscar Hernandez' detention by ORANGE COUNTY, Defendants Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Classification Supervisor ELLEN RITTEN, Administrator COURTNEY PADGETT, Medical Director JANE JENKINS, and Nurses BETTY CARDONA,

LATASHA MCGEE and SANDRA LEWIS were employees of Orange County, Florida, and, specifically, employees of the Orange County Correctional Department and, at all times relevant hereto, were acting under color of law. Further, on the date and at the time of his attempted suicide, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE and Nurse SANDRA LEWIS were on-duty. On information and belief, Captain SEAN FARRELL and Medical Director JANE JENKINS were also on-duty on the date and at the time of OSCAR HERNANDEZ' attempted suicide.

43.     Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER were responsible for the supervision of OSCAR HERNANDEZ and were in charge of his person during his detention. Medical Director JANE JENKINS and Nurses BETTY CARDONA, LATASHA MCGEE and SANDRA LEWIS were responsible for the medical and mental healthcare of OSCAR HERNANDEZ during his detention. OSCAR HERNANDEZ reported to Officer GABRIEL RAMOS on numerous occasions that he experienced claustrophobia while in the isolation cell. Further, Officer GABRIEL RAMOS, Officer TERRY MEYER, and Corporal JERRY HADDOCK were involved in the April 18, 2012. On information and belief, these incidents were reported to Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, and Lieutenant ROBERTA THOMAS by Officer GABRIEL RAMOS, Officer TERRY MEYER, and/or Corporal JERRY HADDOCK. On information and belief, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, as the officers specifically charged with the supervision and detention of OSCAR HERNANDEZ, had direct knowledge of the existence and contents of OSCAR

HERNANDEZ' file, documenting: (1) OSCAR HERNANDEZ' repeated communications to ORANGE COUNTY that he experienced thoughts of self-harm and suicidal ideation; (2) OSCAR HERNANDEZ numerous acts of self-mutilation, including, but not limited to, banging his head against the walls and piercing a pen through his penis; (3) OSCAR HERNADEZ repeatedly being placed on suicide watch; (4) OSCAR HERNANDEZ numerous referrals for psychological, psychiatric, and mental health evaluations; (5) OSCAR HERNANDEZ' inability to speak or understand English; (5) orders that OSCAR HERNANDEZ not be housed alone; and (6) OSCAR HERNANDEZ' extreme claustrophobia while housed in isolation. Further, on information and belief, Medical Director JANE JENKINS, and Nurses BETTY CARDONA, LATASHA MCGEE and SANDRA LEWIS, as the medical director and medical staff charged with OSCAR HERNANDEZ' medical and mental care, had direct knowledge of the existence of OSCAR HERNANDEZ's filed created and kept by ORANGE COUNTY, documenting: (1) OSCAR HERNANDEZ' repeated communications to ORANGE COUNTY that he experienced thoughts of self-harm and suicidal ideation; (2) OSCAR HERNANDEZ numerous acts of self-mutilation, including, but not limited to, banging his head against the walls and piercing a pen through his penis; (3) OSCAR HERNADEZ repeatedly being placed on suicide watch; (4) OSCAR HERNANDEZ numerous referrals for psychological, psychiatric, and mental health evaluations; (5) OSCAR HERNANDEZ' inability to speak or understand English; (5) orders that OSCAR HERNANDEZ not be housed alone; and (6) OSCAR HERNANDEZ' extreme claustrophobia while housed in isolation.

44.     Thus, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Medical Director JANE JENKINS, and Nurses BETTY CARDONA,

LATASHA MCGEE and SANDRA LEWIS knew and were subjectively aware that OSCAR HERNANDEZ posed a high risk of suicide.

45. Furthermore, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Medical Director JANE JENKINS, and Nurses BETTY CARDONA, LATASHA MCGEE and SANDRA LEWIS, as the on-duty correctional staff for ORANGE COUNTY at the time of OSCAR HERNANDEZ' attempted suicide, on information and belief, were either directly involved in, or had direct knowledge of, the decision to move OSCAR HERNANDEZ to an isolation cell monitored by a video camera which transmitted a live feed to the ORANGE COUNTY Corrections Department Command Center after OSCAR HERNANDEZ was discovered with an object capable of inflicting self-harm and with the knowledge that OSCAR HERNANDEZ required monitoring for his own protection.

46. Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, and Officer TERRY MEYER, as the on-duty correctional staff for ORANGE COUNTY at the time of OSCAR HERNANDEZ' attempted suicide were, on information and belief, stationed in the Command Center for the ORANGE COUNTY Corrections Department and/or on patrol at the ORANGE COUNTY jail, including the patrol of OSCAR HERNANDEZ' isolation cell where his attempted suicide took place over the course of almost thirty (30) minutes. As a result, Defendants Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, and Officer TERRY MEYER knew of OSCAR HERNANDEZ' attempted suicide, having observed OSCAR HERNANDEZ stripping the sheets from his bed, taking those sheets to the vent over the toilet, standing on the toilet and tying one end of the sheets to the vent, getting down from the toilet and

checking the door with his make-shift noose tied over the toilet, moving back to the toilet, tying the other end of his make-shift noose around his neck, and proceeding to hang himself from the vent from the live video feed to the command center or by observing OSCAR HERNANDEZ' actions while on patrol, and failed to intervene or take reasonable measures to intervene in deliberate indifference to the attempted suicide of which they had direct knowledge.

47.     Further, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Medical Director JANE JENKINS, Nurse BETTY CARDONA, Nurse LATASHA MCGEE and Nurse SANDRA LEWIS, despite their knowledge of OSCAR HERNANDEZ' history of suicidal ideation and self-mutilation, psychological/psychiatric/mental health evaluations, required suicide watches, and despite their knowledge that OSCAR HERNANDEZ was found earlier that day with an object capable of inflicting self-harm and their knowledge and decision to move OSCAR HERNANDEZ to an isolation cell (in contravention of standing orders that OSCAR HERNANDEZ not be housed alone) equipped with live video monitoring, and, thus, their subjective awareness that OSCAR HERNANDEZ posed a high risk of suicide and required monitoring, failed to monitor OSCAR HERNANDEZ and institute suicide precautions, permitting OSCAR HERNANDEZ to carry out preparations and his attempted suicide over the course of almost thirty (30) minutes.

48.     Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Medical Director JANE JENKINS, Nurse BETTY CARDONA, Nurse BETTY CARDONA, Nurse LATASHA MCGEE and Nurse SANDRA LEWIS' conduct in failing to intervene in OSCAR HERNANDEZ' attempted suicide despite their knowledge and subjective awareness of the attempt during the course of almost thirty (30) minutes or,

alternatively, their failure to monitor OSCAR HERNANDEZ and institute reasonable and appropriate suicide prevention precautions despite their knowledge and subjective awareness that OSCAR HERNANDEZ posed a high risk of suicide, constitutes deliberate indifference to the need for precautions against suicide and to OSCAR HERNANDEZ' clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution, made actionable under 42 U.S.C. § 1983, proximately causing OSCAR HERNANDEZ' injuries as complained of herein.

49. Furthermore, as supervisors of ORANGE COUNTY's Corrections Department present at the scene at the time of OSCAR HERNANDEZ' attempted suicide, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS and Medical Director JANE JENKINS had a duty to intervene and to exercise appropriate command functions over ORANGE COUNTY's correctional staff to ensure the proper monitoring of OSCAR HERNANDEZ, the institution of suicide precautions, and the reasonable intervention in OSCAR HERNANDEZ' attempted suicide. Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, and Medical Director JANE JENKINS' failure to intervene and exercise appropriate command functions, including their directing, encouraging, or acquiescence in OSCAR HERNANDEZ being placed in an isolation cell, without medical and mental health attention and intervention, without instituting suicide precautions, without monitoring the live feed of the surveillance camera within OSCAR HERNANDEZ' cell and without monitoring OSCAR HERNANDEZ via patrol, and not intervening in OSCAR HERNANDEZ's attempted suicide constitute deliberate indifference to a high risk of suicide, in violation of OSCAR HERNANDEZ's clearly established constitutional rights under the Fourteenth Amendment to the Constitution of the United States, proximately causing OSCAR HERNANDEZ's injuries as complained of herein.

## IX. COUNT TWO—SUPERVISORY LIABILITY OF DEFENDANT MAYOR TERESA JACOBS, CAPTAIN SEAN FARRELL, LIEUTENANT JENNIFER KOROPATNICKI, LIEUTENANT ROBERTA THOMAS, CLASSIFICATIONS SUPERVISOR ELLEN RITTEN, ADMINISTRATOR COURTNEY PADGETT, AND MEDICAL DIRECTOR JANE JENKINS VIOLATION OF OSCAR HERNANDEZ' DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

50.     It is clearly established that supervisory officials may be held individually liable for constitutional violations under 42 U.S.C. § 1983 where such supervisory officials participate in the act or omission that causes the constitutional violation or where there is a causal connection between their actions and the constitutional violations that subordinate employees commit. Corporal JERRY HADDOCK and Officers GABRIEL RAMOS and TERRY MEYER removed OSCAR HERNANDEZ from his cell upon discovering him with an object capable of inflicting self-harm and placed him in an isolation cell. Corporal JERRY HADDOCK and Officers GABRIEL RAMOS and TERRY MEYER, amongst others, thereafter observed OSCAR HERNANDEZ attempt suicide or failed to monitor OSCAR HERNANDEZ with deliberate indifference to their subjective awareness and knowledge that OSCAR HERNANDEZ posed a high risk of suicide. Captain SEAN FARRELL and Medical Director JANE JENKINS, on information and belief, as well as Lieutenants JENNIFER KOROPATNICKI and ROBERTA THOMAS personally participated in the decision to remove OSCAR HERNANDEZ from his cell and place him in an isolation cell, or at the very least had direct knowledge of and acquiesced in that decision, as well as personally participated or acquiesced in the monitoring of OSCAR HERNANDEZ or, alternatively, the lack of monitoring, as alleged in Count One, above. Further, Captain SEAN FARRELL, Medical Director JANE JENKINS, Lieutenant JENNIFER KOROPATNICKI, and Lieutenant ROBERTA THOMAS could have prevented the known violation of OSCAR HERNANDEZ' constitutional rights by exercising their supervisory authority and ordering the implementation of medical evaluation and treatment, suicide

precautions, proper monitoring, and/or the reasonable intervention in OSCAR HERNANDEZ attempted suicide.

51.     At the time of this incident, Mayor TERESA JACOBS was the chief executive officer of ORANGE COUNTY and a policymaker for ORANGE COUNTY, employed in a supervisory capacity over ORANGE COUNTY, including the ORANGE COUNTY Corrections Department, and its supervisors, officers, and all employees. At the time of this incident, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, and Lieutenant DEANNE ADAMS were supervisory officers of ORANGE COUNTY Corrections Department, charged with the supervision and training of their subordinate employees, including, but not limited to, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS. At the time of this incident, Classifications Supervisor ELLEN RITTEN was a supervisory employee of ORANGE COUNTY Corrections Department charged with assigning inmate security levels and housing, including, on information and belief, supervising and training subordinate employees, including, but not limited to, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, and Officer TERRY MEYER, regarding the reasonable and appropriate classification and housing of jail inmates who pose a high risk of suicide. At the time of this incident Corrections Administrative Supervisor COURTNEY PADGETT was a supervisory employee of ORANGE COUNTY Corrections Department charged with the supervision and training of ORANGE COUNTY Corrections Department subordinates, including, but not limited to, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, and Officer TERRY MEYER, regarding communication between internal departments, including, jail corrections officers and medical personnel. At the time of this incident, Medical Director JANE JENKINS was a supervisory employee of ORANGE COUNTY charged with the

supervision and training of subordinate employees of ORANGE COUNTY Correction Department subordinates, including, but not limited to, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, regarding medical and mental health care, including, but not limited to, the assessment, evaluation, treatment, and precautions of jail inmates who pose a high risk of suicide.

52.     As supervisory officials, Mayor TERESA JACOBS, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS failure to train corrections staff, including, but not limited to, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, amounted to deliberate indifference to the rights of persons their subordinates would come into contact with, including, but not limited to, OSCAR HERNANDEZ, and which failure proximately caused OSCAR HERNANDEZ' injuries.

53.     ORANGE COUNTY's supervisory officials, including Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS knew, at the time of OSCAR HERNANDEZ' attempted suicide, that suicide is the major cause of death among jail detainees. Further, ORANGE COUNTY's supervisory officials, including Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative

Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS, knew, at the time of OSCAR HERNANDEZ' attempted suicide, that ORANGE COUNTY correctional staff, including Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, daily come into contact with detained persons who are at an exponentially higher risk of suicide than the general population and who pose a high risk of suicide, individually.

54.     Despite their knowledge of the high risk of suicide amongst pretrial detainee jail populations and their knowledge that correctional staff regularly interact with that population, Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS, as supervisory officials of ORANGE COUNTY, failed to train corrections staff, including Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS regarding: (1) the evaluation of jail inmates for suicide risk, including, but not limited to, verbal and behavioral cues that indicate suicide risk; (2) coordination and communication between jail officers and medical staff for mental health assessment, designation of suicide risk, and treatment; (3) regular, documented supervision and monitoring of inmates at risk of potential suicide; (4) suicide watch procedures, protocols and timing; (5) appropriate housing of inmates who are at risk of potential suicide, including training regarding the effects of isolation housing on potentially suicide inmates and the housing of potentially suicidal detainees in cells with appropriate suicide controls; and (6) appropriate and reasonable suicide intervention practices. Defendants Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA

THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS' complete failure to train subordinate employees regarding the assessment, evaluation, precautions, treatment, housing of jail inmates at high risk of suicide, and regarding intervention in attempted suicides, despite their knowledge that such subordinates regularly come in contact with jail inmate populations and their knowledge of the high rate of suicides amongst jail inmate populations, was deliberately indifferent to the constitutional rights of such inmates, including OSCAR HERNANDEZ, under the Fourteenth Amendment to the Constitution of the United States. Furthermore, had Defendants Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS trained correctional staff, including Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, OSCAR HERNANDEZ: (1) would not have been placed in an isolation cell, thereby increasing the likelihood of his attempted suicide and the likelihood that the attempt would be successful or substantially carries out; (2) would not have been placed in a cell which permitted OSCAR HERNANDEZ to take the sheets from his bed and tie them to an accessible vent in crafting a noose to carry out his attempted suicide; (3) would have received a mental health screening by a qualified professional assessing his risk of suicide and provided reasonable and appropriate psychological and/or psychiatric treatment for his mental health condition in his native language; (4) would have been placed regularly monitoring via patrol on ten (10) to fifteen (15) minute intervals; (5) would have been constantly monitored via the live camera feed from OSCAR HERNANDEZ' cell to the Command Center, and, (6) would have received

reasonable and appropriate intervention in his attempted suicide, thus, preventing the injuries he sustained as a result thereof. Thus, Defendant Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS' complete failure to train corrections staff, including Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS regarding suicide assessment, evaluation, treatment, precautions, and interventions proximately caused OSCAR HERNANDEZ injuries resulting from his attempted suicide.

  55. Alternatively, the training provided by Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS' regarding suicide and attempted suicide by jail inmates was knowingly deficient. On information and belief, during the course of Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS' employment by ORANGE COUNTY, and prior to OSCAR HERNANDEZ' attempted suicide, at least dozens of other jail inmates committed suicide and/or attempted suicide as a result of ORANGE COUNTY correctional staff, including, but not limited to, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, being inadequately trained regarding suicide amongst

jail inmates and, as a result of such deficient training, failing to properly and reasonably assess and evaluate inmates who posed a high risk of suicide, failing to properly treat inmates who posed a high risk of suicide, failing to properly house inmates who posed a high risk of suicide (including, but not limited to, housing inmates who posed a high risk of suicide in isolation or in cells which are not reasonably suicide proof), failing to properly monitor jail inmates who posed a high risk of suicide via patrol and by monitoring live surveillance camera feeds, and failing to reasonably and properly intervene in attempted suicides. Defendants Mayor TERESA JACOBS, Captain SEAN FERRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Lieutenant DEANNE ADAMS, Classifications Supervisor ELLEN RITTEN, Corrections Administrative Supervisor COURTNEY PADGETT, and Medical Director JANE JENKINS' failure to adequately train their subordinate employees regarding suicide and attempted suicide amongst the jail inmate population, despite their knowledge that such training was deficient as a result of the numerous other prior suicides and attempted suicides by jail inmates occurring during the time they were employed in a supervisory capacity by ORANGE COUNTY, proximately caused OSCAR HERNANDEZ injuries resulting from his attempted suicide while detained by ORANGE COUNTY.

### X.  COUNT THREE—DEFENDANT ORANGE COUNTY, FLORIDA'S VIOLATION OF OSCAR HERNANDEZ' DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

56.    Defendant, ORANGE COUNTY, FLORIDA, through its policymakers, including, but not limited to, Mayor TERESA JACOBS, promulgated policies, customs, practices, and procedures for ORANGE COUNTY, FLORIDA's Corrections Department and the administration of its facility and interactions with persons detained by and in the custody of ORANGE COUNTY, FLORIDA. On information and belief, the acts and omissions of the individual Defendants who directly participated and were involved Oscar Hernandez' transfer to

an isolation cell, and who failed to reasonably and properly assess, evaluate, treat, monitor and intervene in Oscar Hernandez's attempted suicide on June 14, 2012 (specifically, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS) were in compliance with the actual customs, policies, practices, and procedures of ORANGE COUNTY, FLORIDA.

57.    At the time of OSCAR HERNANDEZ' attempted suicide, and at all times previous thereto, ORANGE COUNTY, FLORIDA knew that the persons within its custody and detained in the ORANGE COUNTY Corrections Department jail facilities were exposed to an exponential risk of suicide. At all times relevant hereto, ORANGE COUNTY knew that jail inmates are much more likely to commit suicide than free persons and, in fact, jail inmates are nine (9) times more likely to commit suicide. Lindsay M. Hayes & Joseph R. Rowan, *National Study of Jail Suicides: Seven Years Later* (National Center on Institutions and Alternatives, Feb. 1988). Further, Lieutenant DEANNE ADAMS reported to media on September 30, 2011 that correctional staff "always have to be on guard" for "depression, mental illness and suicidal behavior." As early as 2008, the Statewide Office of Suicide Prevention and the Florida Department of Corrections, acknowledging the high risk of suicide amongst jail populations, began working on a suicide prevention educational campaign for corrections employees.

58.    The World Health Organization in their report, *Preventing Suicide in Jails and Prison, 2007* states:

> Adequate monitoring of suicidal inmates is crucial, particularly during the night shift (when staffing is low) and in facilities where staff may not be permanently assigned to an area (such as police lockups). The level of monitoring should match the level of risk. Inmates judged to be actively suicidal require constant supervision.

24

> Inmates who have raised staff suspicions of suicide but who do not admit to being actively suicidal, may not require constant supervision but will need to be observed more frequently (e.g., close observation at between 5-15 minute staggered intervals). However, considering a suicide attempt by hanging can take just three minutes to result in permanent brain damage, and 5-7 minutes to be lethal, rounds even at a distance of every 10-15 minutes might be insufficient for an acutely suicidal inmate. Uninterrupted supervision and human contact should be provided while keeping an inmate in segregation. Individual counseling may be a chance for self-expression for the inmate and a possibility for clinical monitoring. Prisoners at risk should not be left alone, but observation and companionship should be provided.

59. OSCAR HERNANDEZ did not receive access to a level of care comparable to that available in the community, as mandated by the Federal Bureau of Prisons, and other Program Statement 5310.13, Institution Management of Mentally Ill Inmates, for their inmates, and sets a standard of care, including state inmates, which states:

> Psychological services within each institution should be sufficient to ensure that every inmate with a documented need and/or interest in psychological treatment has access to a level of care comparable to that available in the community and consistent with the overall mission of institution.

60. In effect at the time of OSCAR HERNANDEZ's commitment to ORANGE COUNTY, the United States Department of Justice, Federal Bureau of Prisons, had promulgated a Program Statement, numbered P5324.08, entitled, Suicide Prevention Program, April 5, 2007 and sets a standard of care, including state inmates. Program Statement P5324.08 specifically deals with the heightened risk of inmates for suicide who were placed in solitary confinement, stating that:

> Inmates in Administrative Detention or Disciplinary Segregation status often may be at a higher risk for suicidal behavior. Inmates being transferred into Protective Custody will be monitored for signs of potential suicide risk….

61.    ORANGE COUNTY, FLORIDA was responsible for OSCAR HERNANDEZ's designation and classification, care and custody, and medical and mental health care needs and did, with deliberate indifference to OSCAR HERNANDEZ' constitutional rights, deprive OSCAR HERNANDEZ of his rights under the Fourth and Fourteenth Amendments.

62.    At all times relevant hereto, ORANGE COUNTY, FLORIDA knew of the standards applicable, as described above, and knew that severe ("clinical") depression is closely associated with a high risk of suicide. At all times relevant hereto, ORANGE COUNTY, FLORIDA knew that OSCAR HERNANDEZ suffered from severe, clinical depression.

63.    The United States Department of Justice Bureau of Justice Statistics, through its Death in Custody Reporting Program, collects inmate death records from each of the nation's 50 state prison systems and approximately 2,800 local jail jurisdictions, including ORANGE COUNTY, FLORIDA. The United States Department of Justice Bureau of Justice Statistics has collected, on information and belief, at least dozens of reported incidents of suicide deaths occurring in ORANGE COUNTY, FLORIDA's detained jail population. On information and belief, there are exponentially more, and possibly hundreds, of incidents of attempted suicides which have occurred in ORANGE COUNTY, FLORIDA's detained jail population which have not been reported to the Bureau of Justice Statistics, but which are and were known to ORANGE COUNTY, FLORIDA and which occurred prior to OSCAR HERNANDEZ' attempted suicide on June 14, 2012.

64.    Despite its knowledge of the high risk of suicide and attempted suicide amongst its own jail population, ORANGE COUNTY, FLORIDA promulgated policies that provided for its correction staff, including, but not limited to, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY

CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, to: (1) move detainees who pose a high risk of suicide to isolation cells which increases the likelihood of the detainee attempting or committing suicide; (2) fail to perform mental health/suicide assessments and evaluations of detainees to determine their risk of suicide and/or who are known to pose a high risk of suicide; (3) fail to provide medical, psychological and/or psychiatric care and treatment of detainees who pose a high risk of suicide; (4) fail to provide for medical, psychological, and/or psychiatric care and treatment of detainees who pose a high risk of suicide in their native language when it is known that those detainees do not speak English or who do not fully comprehend English; (5) move detainees who pose a high risk of suicide into cells which have not been reasonably and adequately suicide proofed and which permit detainees to easily attempt or commit suicide; (6) fail to monitor detainees who pose a high risk of suicide in regular intervals via patrol; (7) fail to monitor detainees who pose a high risk of suicide via live feed surveillance camera footage; and (8) fail and/or refuse to intervene in an ongoing attempted suicide. These policies by ORANGE COUNTY were promulgated with deliberate indifference to the high risk of suicide amongst its jail inmate population and with deliberate indifference to the constitutional rights of those inmates as guaranteed by the Fourteenth Amendment to the United States Constitution, and proximately caused OSCAR HERNANDEZ' injuries which resulted from his attempted suicide while in the custody of ORANGE COUNTY.

65. Further, and to the extent necessary, in the alternative, ORANGE COUNTY promulgated and established unwritten policies, which constitute the customs, practices, and procedures of ORANGE COUNTY that provided for its correction staff, including, but not limited to, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse

SANDRA LEWIS, to: (1) move detainees who pose a high risk of suicide to isolation cells which increases the likelihood of the detainee attempting or committing suicide; (2) fail to perform mental health/suicide assessments and evaluations of detainees to determine their risk of suicide and/or who are known to pose a high risk of suicide; (3) fail to provide medical, psychological and/or psychiatric care and treatment of detainees who pose a high risk of suicide; (4) fail to provide for medical, psychological, and/or psychiatric care and treatment of detainees who pose a high risk of suicide in their native language when it is known that those detainees do not speak English or who do not fully comprehend English; (5) move detainees who pose a high risk of suicide into cells which have not been reasonably and adequately suicide proofed and which permit detainees to easily attempt or commit suicide; (6) fail to monitor detainees who pose a high risk of suicide in regular intervals via patrol; (7) fail to monitor detainees who pose a high risk of suicide via live feed surveillance camera footage; and (8) fail and/or refuse to intervene in an ongoing attempted suicide. These unwritten customs, policies, and practices by ORANGE COUNTY are evidenced by the numerous suicides and attempted suicides carried out by persons detained by and in the custody of ORANGE COUNTY that occurred prior to June 14, 2012 as a result of ORANGE COUNTY failing to assess, evaluate, and treat inmates, failing to properly house inmates, failing to properly monitor inmates, and failing to intervene, or to reasonably intervene, in ongoing attempted suicides, amongst such inmates who were known to pose a high risk of suicide and which occurred prior to June 14, 2012 and which are substantially similar to the incident which forms the basis of this suit. Furthermore, these unwritten customs, policies, and practices by ORANGE COUNTY were promulgated or implemented with deliberate indifference to the high risk of suicide amongst its jail inmate population, of which ORANGE COUNTY had actual and constructive knowledge, and with deliberate indifference to the constitutional rights of those inmates as guaranteed by the Fourteenth Amendment to the

United States Constitution, and proximately caused OSCAR HERNANDEZ' injuries which resulted from his attempted suicide while in the custody of ORANGE COUNTY.

66. Further, ORANGE COUNTY, through its policy making officials, including, but not limited to Mayor TERESA JACOBS, had actual and constructive knowledge of suicides and attempted suicides carried out by persons detained by and in the custody of ORANGE COUNTY Corrections Department and which occurred as a result of the unconstitutional acts and/or omissions of ORANGE COUNTY Corrections Department supervisory and subordinate employees, including, but not limited to: (1) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees failing to screen inmates and detainees for mental health conditions, and failing to assess and evaluate detainees to determine their risk of suicide; (2) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees moving inmates who pose a high risk of suicide, and who are known to pose a high risk of suicide, to isolation cells; (3) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees housing inmates who pose a high risk of suicide, and who are known to pose a high risk of suicide, in cells without taking precautions to ensure that the cells are reasonably suicide proof; (4) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees failing to provide medical, psychological and/or psychiatric care and treatment of detainees who pose a high risk of suicide; (4) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees failing to provide for medical, psychological, and/or psychiatric care and treatment of detainees who pose a high risk of suicide in their native language when it is known that those detainees do not speak English or who do not fully comprehend English; (5) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees failing to monitor detainees who pose a high risk of suicide in regular intervals via patrol; (7) ORANGE COUNTY Corrections Department supervisory and/or

subordinate employees failing to monitor detainees who pose a high risk of suicide via live feed surveillance camera footage; and/or (8) ORANGE COUNTY Corrections Department supervisory and/or subordinate employees failing and/or refusing to intervene, or reasonably intervene, in ongoing attempted suicides. ORANGE COUNTY's acquiescence in the prior unconstitutional practices of its supervisory and/or subordinate employees undertaken with deliberate indifference to other inmates high risk of suicide, and such inmates Fourteenth Amendment rights, without taking corrective measures, of which ORANGE COUNTY had actual and constructive knowledge, constitutes deliberate indifference to a high risk of suicide amongst its jail inmate population, and to the rights secured by the Fourteenth Amendment, and proximately caused OSCAR HERNANDEZ' injuries which resulted from his attempted suicide.

67.     Further, ORANGE COUNTY failed to train, or in the alternative, failed to adequately train ORANGE COUNTY Corrections Department supervisory and/or subordinate employees, including, but not limited to, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, regarding: (1) intake screening of detainees in the custody of ORANGE COUNTY; (2) assessing and evaluating detainees for their level of suicide risk; (3) communication and coordination between corrections officers and corrections medical staff for the evaluation of detainees for suicide risk and/or the treatment of detainees who are known to suffer from mental illness and/or who are known to pose a high risk of suicide; (4) providing treatment to detainees with known mental illnesses and/or who are known to pose a high risk of suicide; (5) housing of detainees who are known to pose a high risk of suicide in isolation; (6) housing of detainees who are known to pose a high risk of suicide in cells that are not reasonably suicide proof and/or which present unreasonable opportunities and

instrumentalities for said inmates to attempt or commit suicide; (7) monitoring of detainees who are known to pose a high risk of suicide at regular and adequate intervals via patrol; (8) monitoring of detainees who are known to pose a high risk of suicide via live feed of surveillance cameras; and (9) intervention in attempted suicides.

68.     ORANGE COUNTY's failure to train, or in the alternative, failure to adequately train, its supervisory and/or subordinate employees, as detailed above, constituted deliberate indifference to the rights of persons with whom untrained and/or inadequately trained employees came into contact. ORANGE COUNTY, at all times relevant hereto, had actual and constructive knowledge that its supervisory and subordinate correctional employees, including, but not limited to, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS, regularly came into contact with persons detained by and in the custody of ORANGE COUNTY Correctional Department. Further, ORANGE COUNTY had actual and constructive knowledge that its failure to train, or in the alternative, failure to adequately train, its supervisory and/or subordinate employees regarding suicide screening, mental health and suicide assessment and evaluation, communication and coordination between jail and medical staff for mental health and suicide evaluation and treatment, reasonable suicide precautions, including, but not limited to, the housing of detainees who are known to pose a high risk of suicide, monitoring of detainees who are known to pose a high risk of suicide, and intervention in ongoing attempted suicides, had caused and/or would cause ORANGE COUNTY's employees to violate the constitutional rights of persons within its custody, as guaranteed by the Fourteenth Amendment to the United States Constitution.

69.     Given the high risk of suicide amongst detainee populations, which was known to ORANGE COUNTY prior to OSCAR HERNANDEZ' attempted suicide, and in light of the duties assigned to correctional officers and medical staff (specifically including, Captain SEAN FARRELL, Lieutenant JENNIFER KOROPATNICKI, Lieutenant ROBERTA THOMAS, Corporal JERRY HADDOCK, Officer GABRIEL RAMOS, Officer TERRY MEYER, Nurse BETTY CARDONA, Nurse LATASHA MCGEE, and Nurse SANDRA LEWIS) which required them to regularly interact with detainees who posed a high risk of suicide and who were known to pose a high risk of suicide, the need for more and/or different training was obvious, and the inadequacy in training so likely to result in the violation of detainees Fourteenth Amendment rights, that ORANGE COUNTY's decisions and conduct, with respect to training, constituted deliberate indifference to the need for additional training. Furthermore, ORANGE COUNTY had actual and constructive knowledge of numerous previous suicides and attempted suicides carried out persons in their detention and custody, and which suicides were permitted to be carried out because of ORANGE COUNTY's failure to train, or in the alternative, adequately train, its supervisory and/or subordinate employees regarding: (1) mental health and suicide intake screening; (2) mental health and suicide assessment and evaluation during detention; (3) communication and coordination between jail officers and medical personnel employed by ORANGE COUNTY; (4) treatment of mental ill and/or suicidal detainees; (5) appropriate housing of detainees known to pose a high risk of suicide; (6) appropriate monitoring of detainees known to pose a high risk of suicide, via patrol and surveillance camera monitoring; and (7) the reasonable and prompt intervention in ongoing attempted suicides, as documented by ORANGE COUNTY. Thus, ORANGE COUNTY had actual and constructive knowledge of the omissions in the training provided by ORANGE COUNTY.

70.     Further, and to the extent necessary, in the alternative, given the numerous prior suicides and attempted suicides which occurred prior to June 14, 2012, ORANGE COUNTY had actual and constructive knowledge that its lack of policies, training, or administrative guidance would cause its employees to violate the constitutional rights of the persons within its custody through deliberate indifference to a known high risk of suicide amongst the general jail population and with respect to specific inmates suffering from mental illness and who posed a high risk of suicide. As a result, ORANGE COUNTY's training, and lack thereof, and/or lack of policies and administrative guidance represents the policy of ORANGE COUNTY and constitutes deliberate indifference to the rights of detainees within ORANGE COUNTY's custody.

71.     ORANGE COUNTY's conduct resulted in OSCAR HERNANDEZ, who was known to pose a high suicide risk, not being treated, or not being adequately treated, for a known mental illness which resulted in a known high risk of suicide, and, subsequently, being placed in an isolation cell which had not been reasonably subjected to suicide precautions and which permitted OSCAR HERNANDEZ to remove the sheets and tie them to an accessible vent, and hang himself over the course of almost thirty (30) minutes, without intervention by ORANGE COUNTY employees, and, thus, proximately caused Oscar Hernandez's injuries, as complained of herein.

## XI.    DEMAND FOR JURY TRIAL

72.     PLAINTIFF hereby demand a jury trial on all issues triable by a jury.

## XII.    PRAYER FOR RELIEF

73.     **WHEREFORE**, Plaintiff respectfully request this Court to:

a. Declare the actions complained of herein to be in violation of First, Fifth and , and Fourteenth Amendment to the United States Constitution as well as Florida and Federal law;

b. Enter judgment in favor of Plaintiffs and against all Defendants, individually and jointly;

c. Award Plaintiffs' damages to compensate for their injuries in an amount in excess of $75,000.00 including:

(1) costs and attorney's fees;

(2) nominal, compensatory, and special damages;

(3) pain and suffering;

(4) a sum to compensate OSCAR HERNANDEZ's mother for loss of companionship and right to familial association;

(5) punitive damages in sum as to deter Defendants conduct of this nature in the future; and

(6) all other relief that this court deems just and proper under the circumstances.

d. Enter judgment in favor of Plaintiff and against all the Defendants, individually and collectively;

74. Dated: April 24, 2017

*Respectfully submitted,*

*/s/ Justin A. Smith*

_____

John D. Sloan, Jr.
jsloan@sloanfirm.com
Texas Bar No. 18505100
Justin A. Smith
jsmith@sloanfirm.com
Texas Bar No. 24068415
SLOAN, HATCHER, PERRY, RUNGE, ROBERTSON & SMITH
101 E. Whaley
P.O. Drawer 2909

Longview, Texas 75606
Phone: (903) 757-7000
Fax:    (903) 757-7574

And

John de Leon
Florida Bar No. 650390
Law Offices of Chavez & De Leon, P.A.
1399 SW 1st Avenue, Suite 202
Miami, FL  33130
Phone:  (305) 740-5347
Fax:      (305) 740-5348
Email:  info@chavez-deleon.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that, on the 24th day of April, 2017, a true and correct copy of the foregoing was furnished to all counsel of record via electronic service through the CM/ECF system of the Middle District of Florida.

/s/ Justin A. Smith

_____

Justin A. Smith
jsmith@sloanfirm.com
Texas Bar No. 24068415
SLOAN, HATCHER, PERRY, RUNGE,
   ROBERTSON & SMITH
101 E. Whaley
P.O. Drawer 2909
Longview, Texas 75606