UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIDIA PATRICIA HERNANDEZ,
As next friend to OSCAR ALEXANDER
DIAZ HERNANDEZ,

      Plaintiff,

v.                                                          Case No:   6:16-cv-1017-Orl-28TBS

TERESA JACOBS, DEANNE ADAMS,
TERRY L. MEYER, GABRIEL RAMOS,
JERRY HADDOCK, ROBERTA
THOMAS, ELLEN RITTEN, COURTNEY
PADGETT, JANE JENKINS, JENNIFER
A. KOROPATNICKI, SEAN FARRELL,
LATASHA MCGEE, SANDRA LEWIS,
ORANGE COUNTY, FLORIDA and
BETTY CARDONA,

      Defendants.
_____

## REPORT AND RECOMMENDATION

      This case comes before the Court on the Defendants' motions to dismiss Plaintiff's

second amended complaint (Docs. 151-153). Plaintiff Nidia Patricia Hernandez

("Plaintiff"), as next friend to her son, Oscar Alexander Diaz Hernandez ("Hernandez"),

has filed responses to the motions (Docs. 154-156), and Defendants have filed replies

(Docs. 164, 165). After review and consideration, I respectfully recommend that the

motions be **GRANTED** as to Defendants Betty Cardona, Latasha McGee, and Sandra

Lewis (the "Nurses"), and Defendants Teresa Jacobs, Deanne Adams, Terry L. Meyer,

Gabriel Ramos, Jerry Haddock, Roberta Thomas, Ellen Ritten, Courtney Padgett, Jane

Jenkins, Jennifer A. Koropatnicki, and Sean Farrell (the "Individual Defendants"), and

**DENIED** as to Orange County, Florida (the "County").

## Background

In an earlier iteration of the complaint, Hernandez alleged that he was in a "semi-vegetative state," and there were no allegations that he was represented by a legal or natural guardian (Doc. 19, ¶38). I noted that, pursuant to FED. R. CIV. P. 17(c), certain representatives (a general guardian, a committee, a conservator, or a like fiduciary) may sue on behalf of an incompetent person, and that an incompetent person who does not have a duly appointed representative may sue by a next friend or guardian ad litem. Based upon Hernandez' allegations, I suggested that appointment of a next friend or guardian ad litem might be appropriate (Doc. 146). The Court agreed and directed that this action be brought through a next friend, authorized representative, or, if necessary, that appointment of a guardian ad litem be sought (Doc. 147). As directed, the second amended complaint is brought by Plaintiff as next friend of Hernandez (Doc. 148 at 1).

Hernandez, a resident of Honduras, was taken into custody and lodged in the County jail on November 18, 2009 (Id., ¶¶ 8, 24). On January 20, 2010, Hernandez told jailers he was thinking about hurting himself, which prompted a medical evaluation (¶ 26). On or about October 2, 2010, the County's correctional staff drafted a report, placed in the file, recording Hernandez' inability to speak English and that he was in fear of his life. In a separate report, the correctional staff recorded Hernandez' request for protective custody, that he was in fear of his life, and that he was designated "DO NOT HOUSE ALONE." (Id.). On October 5, 2010, correctional staff observed that Hernandez pierced a pen through the top of his penis, prompting a request for a mental health evaluation which lead to Hernandez being relocated for suicide prevention (Id.). On October 11, 2010, the correctional staff reported in a memorandum, transmitted to Correctional Department Major Adkins and placed in Hernandez' file, that Hernandez made a request for protective

custody on October 5, 2010, and that he did not understand English and required a translator. On December 11, 2010, correctional staff again noted that Hernandez should not be housed alone (Id.).

In 2011, Hernandez reported experiencing thoughts of self-harm and wanting to commit suicide (Id., ¶27). On February 1, 2011, he told correctional officers that he wanted to kill himself (Id.). On August 7, 2011, Hernandez had to be restrained from throwing himself off the top tier railings of the jail (Id.). On September 2, 2011, Hernandez made another request for protective custody, which, along with a second notation that he does not understand English, was recorded in a memorandum, transmitted to the County's Administrative Supervisor, Courtney Padgett, and placed in Hernandez' file (Id.).

On January 8, 2012, Hernandez "appeared to be upset with himself and began to display self-injurious behavior by banging his head on the wall," prompting another request for psychological observation (Id., ¶ 28). Hernandez was moved to isolation. On January 11, 2012, he asked to be moved out of isolation, telling Officer Ramos that he is claustrophobic (Id.). On April 18, 2012, Hernandez once again expressed a desire to harm himself (Id.). On June 13, 2012, he was moved back into isolation, and he again told Officer Ramos he was experiencing feelings of claustrophobia and could not be housed in isolation (Id.).

Plaintiff alleges that on June 14, 2012, correctional officers Gabriel Ramos and Jerry Haddock found Hernandez in possession of a razor and a spoon with a missing handle, which he could use to harm himself (Id., ¶ 29). Captain Sean Farrell, Lieutenants Jennifer Koropatnicki and Roberta Thomas, Corporal Jerry Haddock, and Officers Gabriel Ramos and Terry Moyer disciplined Hernandez and placed him back in an isolation cell, despite the fact that County records allegedly known to these Defendants clearly stated

that Hernandez was not to be housed alone, experienced thoughts of self-harm, had carried out prior attempts to harm and mutilate himself, and experienced claustrophobia when housed in isolation (Id.).

The isolation cell Hernandez was placed in was equipped with video camera surveillance which transmitted a live feed to the jail Command Center (Id., ¶ 30). Plaintiff asserts that the video feed transmitted to the Command Center was visible to the County's on-duty correctional staff. On June 14, 2012, while Officers Farrell, Koropatnicki, Thomas, Haddock, Meyer, and Ramos, Medical Director Jane Jenkins, and the Nurses were on duty, Hernandez attempted to hang himself (Id.).

Plaintiff alleges that despite Hernandez' well-documented history of suicidal thoughts, suicidal ideation, and self-mutilation, and despite the fact that correctional staff knew Hernandez required observation for his own safety, the Defendants took no steps to monitor Hernandez while he was in isolation (Id.). Had they been watching the video surveillance, the jail staff allegedly would have seen Hernandez prepare and attempt to commit suicide over the course of almost 30 minutes (Id.). Plaintiff complains that during this time, Defendants failed to intervene, in deliberate indifference to Hernandez' known high risk of suicide (Id.). According to Plaintiff, Hernandez "prepared and executed his suicidal hanging for over twenty-five (25) minutes while in full view ORANGE COUNTY and its on-duty correctional staff without any intervention by DEFENDANTS." (Id., ¶32). Based upon these allegations, Plaintiff sues all Defendants for the violation of Hernandez' due process rights under the Fourteenth Amendment (Id.).

## Discussion

### A. Motion to Dismiss Standard

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal

sufficiency of the complaint. In order to survive the motion, the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In evaluating a complaint under this standard, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011). Legal conclusions devoid of any factual support are not entitled to an assumption of truth. Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 679).

*B. Analysis*

Defendants argue that Plaintiff has not properly plead the necessity for an appearance by next friend; the second amended complaint is an impermissibly vague "shotgun" pleading; Plaintiff has failed to state a cause of action; and certain Defendants are entitled to qualified immunity. Although many of the issues overlap, I take each motion, in turn.

The County's Motion (Doc. 151)

*Next friend*

In the Eleventh Circuit, a next friend: (1) must "prove that the real party in interest cannot pursue his own cause due to some disability ... and (2) must show some relationship or other evidence that demonstrates the next friend is truly dedicated to the interests of the real party in interest." Gonzalez ex rel. Gonzalez v. Reno, 86 F. Supp. 2d 1167, 1185 (S.D. Fla.), *aff'd sub nom*. Gonzalez v. Reno, 212 F.3d 1338 (11th Cir. 2000)

(internal citations omitted). With respect to the first requirement, the Court has already

accepted (for present purposes) the allegations that Hernandez has significant cognitive

disabilities,[1] and Plaintiff's appearance as next friend was at the explicit direction of the

Court. As for the second requirement, while it is true that next friend status is not

automatic, Ford v. Haley, 195 F.3d 603, 624 (11th Cir. 1999), Plaintiff's response states

that she is Hernandez' mother[2] and I see no reason to doubt that she is truly dedicated to

his interests. For these reasons, I find Defendants' arguments are not a basis to dismiss

the complaint.

*The Due Process Claim*

"[T]o sustain a 1983 action, a plaintiff must make a *prima facie* showing that the act

or omission of a person acting under color of state law deprived plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the United States." Cannon

v. Taylor, 782 F.2d 947, 949 (11th Cir.1986) (citing Parratt v. Taylor, 451 U.S. 527, 535,

101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). In Count Three, Plaintiff complains that the

County violated Hernandez' due process rights under the Fourteenth Amendment to the

United States Constitution (Doc. 148 at 23, *et seq.*).

> "[I]n a prisoner suicide case, to prevail under section 1983 for
> violation of substantive rights, under ... the ... fourteenth
> amendment, the plaintiff must show that the jail official
> displayed 'deliberate indifference' to the prisoner's taking of
> his own life." Cagle, 334 F.3d at 986 (quoting Edwards v.
> Gilbert, 867 F.2d 1271, 1274-75 (11th Cir.1989)). "To
> establish a defendant's deliberate indifference, the plaintiff has
> to show that the defendant had '(1) subjective knowledge of a

---

[1] Because of this conclusion, the Court need not and does not address the state court records and other exhibits Plaintiff attaches to her response purporting to document Hernandez' mental illness and disabilities.

[2] Defendants correctly note the discrepancy between the various spellings of Ms. Hernandez' first name in the pleadings and elsewhere. While this may evidence sloppy drafting, I find these inconsistencies far less confusing than Plaintiff's interchangeable use of "suicide" and "attempted suicide" in earlier versions of the complaint.

> risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence.'" Id. at 987 (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999)). Under this Circuit's precedent, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard "a strong likelihood rather than a mere possibility that the self-infliction of harm will occur." Id. at 986 (emphasis in original) (quoting Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir.1990)). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Id. (quoting Tittle, 10 F.3d at 1540).

Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1115 (11th

Cir. 2005). With respect to the actions of a municipality, the Eleventh Circuit has stated:

> Although the Supreme Court has held that counties (and other local government entities) are "persons" within the scope of § 1983, and subject to liability, **[a plaintiff] cannot rely upon the theory of respondeat superior to hold the County liable.** [fn omitted] See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); Pembaur v. Cincinatti, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). **A county does not incur § 1983 liability for injuries caused solely by its employees.** Monell, 436 U.S. at 694, 98 S.Ct. 2018. Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability and causation. Bd. of County Com'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. See Canton, 489 U.S. at 388, 109 S.Ct. 1197.

McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (emphasis added); see also

Nettles v. City of Leesburg--Police Dep't, 415 F. App'x 116, 121-22 (11th Cir. 2010).

As a pretrial detainee, Hernandez had a Fourteenth Amendment due process right "to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." Cook. 402 F.3d at 1115 (internal citation and quotations omitted). The question is whether Plaintiff has alleged a sufficient factual basis to support the second and third prongs of the test to impose § 1983 liability on the County. To succeed on this § 1983 claim, Plaintiff must establish that the County itself (through custom or policy) was deliberately indifferent to the possibility of Hernandez' suicide attempt, and that indifference caused the violation of his right to medical care and to be protected from self-inflicted injuries. See Cook, 402 F. 3d at 1115-16, citing Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir.1994).

The County argues that Plaintiff fails to point to any actual policies or customs that led to Hernandez' suicide attempt, "other than broad and sweeping statements" (Doc. 151 at 8). I do not agree. Plaintiff alleges:

> a) The County, "through its policymakers, including, but not limited to, Mayor TERESA JACOBS, promulgated policies, customs, practices, and procedures for ORANGE COUNTY, FLORIDA's Corrections Department and the administration of its facility and interactions with persons detained by and in the custody of ORANGE COUNTY, FLORIDA" (Doc. 148, ¶56)
>
> b) The County "knew that the persons within its custody and detained in the ORANGE COUNTY Corrections Department jail facilities were exposed to an exponential risk of suicide," citing a reported national study, state study, and World Health Organization reports (¶¶57, 58)
>
> c) Hernandez did not receive access to a level of care comparable to that available in the community, as mandated by the Federal Bureau of Prisons in program statements (¶¶ 59, 60)
>
> d) The County knew of these standards, knew that severe ("clinical") depression is closely associated with a high risk of

suicide, and knew that Hernandez suffered from severe, clinical depression (¶62)

e) "On information and belief, there are exponentially more, and possibly hundreds, of incidents of attempted suicides which have occurred in ORANGE COUNTY, FLORIDA's detained jail population which have not been reported to the Bureau of Justice Statistics, but which are and were known to ORANGE COUNTY, FLORIDA and which occurred prior to OSCAR HERNANDEZ' attempted suicide on June 14, 2012" (¶63)

f) Despite its knowledge of the high risk of suicide and attempted suicide amongst its own jail population, the County "promulgated policies" or, alternatively, "promulgated and established unwritten policies, which constitute the customs, practices, and procedures of the County", that provided for its correction staff to:

(1) move detainees who pose a high risk of suicide to isolation cells which increases the likelihood of the detainee attempting or committing suicide;

(2) fail to perform mental health/suicide assessments and evaluations of detainees to determine their risk of suicide and/or who are known to pose a high risk of suicide;

(3) fail to provide medical, psychological and/or psychiatric care and treatment of detainees who pose a high risk of suicide;

(4) fail to provide for medical, psychological, and/or psychiatric care and treatment of detainees who pose a high risk of suicide in their native language when it is known that those detainees do not speak English or who do not fully comprehend English;

(5) move detainees who pose a high risk of suicide into cells which have not been reasonably and adequately suicide proofed and which permit detainees to easily attempt or commit suicide;

(6) fail to monitor detainees who pose a high risk of suicide in regular intervals via patrol;

(7) fail to monitor detainees who pose a high risk of suicide via live feed surveillance camera footage; and

(8) fail and/or refuse to intervene in an ongoing attempted suicide" (¶¶64, 65).

These unwritten customs, policies, and practices "are evidenced by the numerous suicides and attempted suicides carried out by persons detained by and in the custody of" the County that occurred prior to June 14, 2012, "as a result of ORANGE COUNTY failing to assess, evaluate, and treat inmates, failing to properly house inmates, failing to properly monitor inmates, and failing to intervene, or to reasonably intervene, in ongoing attempted suicides, amongst such inmates who were known to pose a high risk of suicide and which occurred prior to June 14, 2012 and which are substantially similar to the incident which forms the basis of this suit." Furthermore, these unwritten customs, policies, and practices by ORANGE COUNTY were promulgated or implemented with deliberate indifference to the high risk of suicide amongst its jail inmate population (¶65)

g) The County failed to train, or in the alternative, failed to adequately train its supervisory and subordinate employees and the County had actual and constructive knowledge that its failure to train, or in the alternative, failure to adequately train, its supervisory and/or subordinate employees regarding suicide screening, mental health and suicide assessment and evaluation, communication and coordination between jail and medical staff for mental health and suicide evaluation and treatment, reasonable suicide precautions, including, but not limited to, the housing of detainees who are known to pose a high risk of suicide, monitoring of detainees who are known to pose a high risk of suicide, and intervention in ongoing attempted suicides, had caused and/or would cause the County's employees to violate the constitutional rights of persons within its custody (¶¶66-68).

h) Given the high risk of suicide amongst detainee populations, which was known to the County, and in light of the duties assigned to correctional officers and medical staff, the need for more and/or different training was obvious, and the inadequacy in training so likely to result in the violation of detainees Fourteenth Amendment rights, that the County's decisions and conduct, with respect to training, constituted deliberate indifference to the need for additional training (¶69)

i) The County's training, and lack thereof, and/or lack of policies and administrative guidance represents the policy of the County and constitutes deliberate indifference to the rights of detainees (¶70).

Thus, Plaintiff alleges that the County fails to assess, evaluate, and treat suicidal inmates, fails to properly house suicidal inmates, fails to properly monitor inmates, and fails to intervene, or to reasonably intervene, in ongoing attempted suicides and that all of these failures led to Hernandez' suicide attempt. These allegations are all made in the context of a policy, custom or practice.

These allegations, construed liberally, are sufficient to state a claim for municipal liability against the County, under City of Canton. Hernandez had a Fourteenth Amendment right to adequate medical care and to be protected from self-inflicted injuries, and Plaintiff has alleged (albeit broadly) that the County had a policy or custom of ignoring medical needs of suicidal inmates by failing to adequately train staff to assess and treat inmates and by failing to properly house and monitor suicidal inmates, despite notice of previous suicides. Plaintiff has alleged that the execution of these policies led to the deprivation of his constitutional rights (the lack of medical care and protection from self-inflicted injury). Plaintiff must still meet the subjective knowledge requirements set forth in Cook. Although there is a significant difference between pleading these allegations and proving them, for present purposes, I find that the allegations that one or more Defendants had actual knowledge of Hernandez' history of suicidal ideation, repeated acts of self-harm, and repeated inability to tolerate isolation, coupled with the allegations of knowledge of prior suicides at the jail and the totality of the other allegations listed above, are enough to adequately plead that the County was deliberately indifferent to Plaintiff's risk of suicide. See Gamez v. Brevard Cty., Fla., No. 6:06-CV-716ORL-22DAB, 2007 WL 1626734, at *7 (M.D. Fla. June 5, 2007). As such, the County's motion to dismiss should be denied.

The Nurses' Motion (Doc. 152)

Count One alleges that the Nurses violated Plaintiff's due process rights. The Nurses seek dismissal of this claim against them on the grounds that: Plaintiff has failed to properly plead next friend status; Plaintiff's pleading contains insufficient and vague allegations that do not meet the pleading standard; Plaintiff has failed to properly plead deliberate indifference as to these Defendants; and, even if the claims were properly pled, these Defendants are entitled to qualified immunity.

*Next Friend*

The Nurses repeat the arguments made by the County. For the reasons already stated, I do not find this objection sufficient to warrant dismissal of the second amended complaint. The Nurses fare better with their remaining arguments.

*The Second Amended Complaint is impermissibly vague and confusing*

Count One alleges due process violations collectively against ten named Defendants. However, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F. 3d 1325, 1331 (11th Cir. 2008). Plaintiff has failed to clearly set forth the allegations purportedly directed to each individual Defendant. Consequently, the second amended complaint fails to satisfy the pleading standard of Rule 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") from each of the ten Defendants. See Rule 8(a)(2), FED. R. CIV. PROCEDURE.

*Qualified Immunity and Deliberate Indifference*

"Government officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hartley v. Parnell,

193 F.3d 1263, 1268 (11th Cir.1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, ... protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).The analysis focuses on two questions: "first ... whether there is 'an underlying constitutional violation,' [and] second ... whether the law the public official is alleged to have violated was 'clearly established' at the time of incidents giving rise to the suit." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (internal citations omitted). If a plaintiff fails to allege the violation of a clearly established constitutional right, a defendant is entitled to qualified immunity upon a motion to dismiss. Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997); see also Lee v. Ferraro, 284 F.3d at 1194 ("Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'").

To be entitled to qualified immunity, a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Dang by & through Dang v. Sheriff, Seminole Cty. Florida, 856 F.3d 842, 849 (11th Cir. 2017) (internal quotation omitted). Here, it is undisputed that all of the Nurses and Individual Defendants were acting within their discretionary authority, under color of state law (Doc. Doc. 148, ¶¶ 2, 42). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194. "A court evaluating a claim of qualified immunity must 'determine whether the plaintiff has alleged the deprivation of an

actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Dang, 856 F. 3d at 849, quoting Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).

Construed liberally, Plaintiff claims that the Nurses were deliberately indifferent to Hernandez' right to medical care and to be protected from self-harm. The few allegations that are directed to the Nurses conduct do not establish a plausible basis for a claim of deliberate indifference. As noted above, to establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence. Cook. Plaintiff has generally pled that Hernandez did not receive "proper medical treatment" (Id., ¶¶ 38-41). This requires Plaintiff to show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and Hernandez' injury. Dang, 856 F.3d at 850. Plaintiff has failed to allege plausible facts to support a conclusion that the conduct of *each* of the Nurses meets this standard.

The second amended complaint contains numerous references to "correctional staff." The averments concerning the individual conduct of the Nurses are more limited. The Nurses are generally alleged to have been "on duty" and "responsible for the medical and mental healthcare of OSCAR HERNANDEZ during his detention." (Id., ¶¶ 42-43). Although Plaintiff alleges Hernandez' history of mental health difficulties and incidents of suicidal ideation and self-harm, Plaintiff does not allege that the Nurses were directly involved in any of that history. Rather, Plaintiff asserts that: "All of the above incidents were recorded and noted in OSCAR HERNADEZ' file and, *on information and belief*, known to Defendants ... Nurses BETTY CARDONA, LATASHA MCGEE, and SANDRA

LEWIS." (Id., ¶ 28, see also ¶ 43 (upon information and belief the nurses had "direct knowledge of the existence of" the file)). Based on their supposed knowledge of the existence of the file and the fact that they were on duty, Plaintiff contends that the Nurses "knew and were subjectively aware" that Hernandez posed a high risk of suicide (Id., ¶ 44).

Plaintiff fails to allege that on the day Hernandez attempted suicide, any of the Nurses had contemporaneous knowledge of the event leading to his being placed in an isolation cell, or that he was, in fact, in an isolation cell (see ¶¶ 29 and 30).[3]  Plaintiff alleges only that "on information and belief" the isolation cell in which Hernandez was placed was equipped with video camera surveillance which transmitted a live feed to the Command Center and that "on information and belief," the video feed transmitted to the Command Center "is visible to ORANGE COUNTY's on-duty correctional staff." (Id., ¶ 30). Despite the absence of affirmative factual allegations, Plaintiff concludes that the Nurses and the other Defendants named in this count, "as the on-duty correctional staff for ORANGE COUNTY at the time of OSCAR HERNANDEZ' attempted suicide, *on information and belief,* were either directly involved in, or had direct knowledge of, the decision to move OSCAR HERNANDEZ to an isolation cell monitored by a video camera which transmitted a live feed to the ORANGE COUNTY Corrections Department Command Center after OSCAR HERNANDEZ was discovered with an object capable of inflicting self-harm and with the knowledge that OSCAR HERNANDEZ required monitoring for his own protection." (Id., ¶ 45). Further, "despite their knowledge of

---

[3] Plaintiff alleges: "the fact that SEAN FARRELL, JENNIFER KOROPATNICKI, ROBERTA THOMAS, JERRY HADDOCK, GABRIEL RAMOS, and TERRY MEYER knew that Mr. Hernandez required observation for his own safety by placing him in a cell equipped with video surveillance ..." (¶30). Plaintiff also alleges that the Nurses arrived at Hernandez' cell *after* he attempted to hang himself (Id., ¶ 31).

OSCAR HERNANDEZ' history of suicidal ideation and self-mutilation, psychological/psychiatric/mental health evaluations, required suicide watches, and despite their knowledge that OSCAR HERNANDEZ was found earlier that day with an object capable of inflicting self-harm and their knowledge and decision to move OSCAR HERNANDEZ to an isolation cell (in contravention of standing orders that OSCAR HERNANDEZ not be housed alone) equipped with live video monitoring, and, thus, their subjective awareness that OSCAR HERNANDEZ posed a high risk of suicide and required monitoring, failed to monitor OSCAR HERNANDEZ and institute suicide precautions, permitting OSCAR HERNANDEZ to carry out preparations and his attempted suicide over the course of almost thirty (30) minutes." (Id., ¶47; see also ¶ 48). These allegations are insufficient as a matter of law to state a claim of deliberate indifference against the Nurses.

Plaintiff's fails to plead sufficient *facts* to support the conclusion that the Nurses had actual subjective awareness of a present risk of suicide and that they deliberately disregarded that risk. At best, Plaintiff has alleged that *on information and belief* the Nurses were aware of the existence of a file detailing Hernandez' history and *upon information and belief* the isolation cell he was placed in had a live camera feed which was visible to "staff." Liability cannot rest on so slim a reed, as "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." Burnette, 533 F. 3d at 1331. There are no other facts pled to support the conclusion that the Nurses actually knew of Hernandez' mental status on the day he attempted suicide, or that his mental status represented a serious medical need. Plaintiff has also failed to plead facts to show that the Nurses were involved in the decision to place Hernandez in an isolation cell, had a duty to (and did) monitor the isolation cell, or were involved in any way with the

events of that day, until arriving to render medical aid after the incident occurred. For these reasons, the Nurses motion to dismiss should be granted.[4] As Plaintiff has had numerous opportunities to amend the claims against the Nurses, I respectfully recommend that this claim against the Nurses be dismissed, without leave for further amendment.

> The Motion of the Individual Defendants (Doc. 153)

The Individual Defendants move to dismiss the second amended complaint with prejudice, based upon deficiencies in the assertion of next friend status, failure to state a claim under FED. R. CIV. P. 8 and 12(b)(6), and under the doctrine of qualified immunity. As I do not find the next friend objection sufficient to dismiss, I turn to the remaining arguments.

> *Shotgun pleading*

The Individual Defendants contend that the second amended complaint is an impermissible "shotgun" pleading which violates Rule 8. As I noted in my earlier Report and Recommendation, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015). The most common type of shotgun pleading "is [one] containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. at 1321. The second amended complaint contains allegations

---

[4] Because I find that no cognizable cause of action has been properly pled against the Nurses, I need not further discuss their entitlement to qualified immunity for such a claim.

that are directed to the entire "action," but are not explicitly incorporated into the three counts (Doc. 148, ¶¶ 1-11). As explained by Plaintiff,

> The Complaint refers to "Defendants" in paragraph one through three, which provide a brief overview of the nature of the case and preliminary statement. See Second Am. Complaint, pg. 2–3, ¶ 1–3. Paragraph 33 through 39 is an overview of the general allegations, whereas Count 1 through 3 lists the specific allegations against specific defendants. Compare id. at pg. 10–11, ¶ 33–39 with pg. 11-33, ¶ 42–71.

(Doc. 156 at 11). Plaintiff contends that this distinguishes the second amended complaint from a shotgun pleading in that "Plaintiff has specifically laid out the facts and specifically laid out each count, alleging specific facts supporting Plaintiff's claims against each Defendant." (Id., at 14). I am not persuaded.

Plaintiff has consolidated his claims against ten Defendants in Count One and seven Defendants in Count Two. These counts do not segregate the allegations supporting claims against each individual Defendant. Additionally, some allegations refer generally to "Defendants" (Doc. 148 ¶¶ 1, 2, 3, 5, 32-39, 41, 73) and "ORANGE COUNTY correctional staff" (Id. ¶¶ 25-28), making it unclear which Individual Defendant is being held to answer them. While Plaintiff contends that this objection is a "pretense," I agree with the Individual Defendants that the complaint fails to comply with the pleading standard of Rule 8. The absence of clear allegations directed to each Individual Defendant also strengthens their claims of qualified immunity.

### Qualified Immunity

The Individual Defendants assert that they are each entitled to qualified immunity and that the second amended complaint fails to state a cause of action for deliberate indifference under §1983. All of the Individual Defendants are alleged to have been acting within their discretionary authority, under color of state law. See Doc. 148, ¶¶2, 42.

Therefore, the burden shifts to Plaintiff to show that qualified immunity is not appropriate.

Lee, 284 F.3d at 1194. As noted earlier, in the context of a prison suicide (or attempt), the

analysis is as follows:

> "In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official displayed *deliberate indifference* to the prisoner's taking of his own life." Edwards v. Gilbert, 867 F.2d 1271, 1274-75 (11th Cir.1989) (emphasis added) (quotation omitted). "In addition, once the defense of qualified immunity is raised, the plaintiff must persuade the court that the law was clearly established that the defendant's conduct in the circumstances amounted to deliberate indifference." Id. at 1275 (quotation omitted).

>> [D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. Therefore, summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge, as follows: since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.

> McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999) (alterations adopted) (quotation marks and citations omitted). "Absent knowledge of a detainee's suicidal tendencies, failure to prevent suicide has never been held to constitute deliberate indifference." Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir.1990) (per curiam).

Jackson v. West, 787 F.3d 1345, 1353 (11th Cir. 2015) (holding that an officer is liable

under § 1983 for the suicide of an inmate only if he had subjective knowledge of a serious

risk that the inmate would commit suicide and he disregarded that known risk).

"The second element of a deliberate indifference claim has both a subjective and

an objective component. To satisfy the subjective component, the plaintiff must allege

facts that would allow a jury to conclude that the defendant actually knew the plaintiff

faced a substantial risk of serious harm. To satisfy the objective component, the plaintiff

must allege facts showing that the defendant disregarded the known risk by failing to

respond to it in an objectively reasonable manner. Scott v. Miami Dade Cty., 657 F. App'x

877, 882-83 (11th Cir. 2016) (citing Caldwell v. Warden, FCI Talladega, 748 F.3d 1090,

1099 (11th Cir. 2015). Thus:

> "To be deliberately indifferent a prison official must know of
> and disregard an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference." Goodman, 718 F.3d at
> 1332 (quotations and citations omitted); see Bowen v. Warden
> Baldwin State Prison, 826 F.3d 1312, 1321 (11th Cir. 2016)
> ("[I]t is only a heightened degree of culpability that will satisfy
> the subjective knowledge component of the deliberate
> indifference standard, a requirement that is far more onerous
> than normal tort-based standards of conduct sounding in
> negligence." (quotations and citation omitted)); Brown v.
> Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) ("Merely
> negligent failure to protect an inmate from attack does not
> justify liability under section 1983.").

Baker v. Williams, No. 3:16-CV-224-J-32JBT, 2017 WL 1929677, at *2 (M.D. Fla. May 10,

2017). "To be deliberately indifferent to a strong likelihood that the prisoner will commit

suicide, the official must be subjectively aware that the combination of the prisoner's

suicidal tendencies and the feasibility of suicide in the context of the prisoner's

surroundings creates a strong likelihood that the prisoner will commit suicide." Gish v.

Thomas, 516 F.3d 952, 954-55 (11th Cir. 2008). Against this standard, I examine the

allegations, bearing in mind that "[e]ach individual Defendant must be judged separately

and on the basis of what that person knows," Burnette, 533 F.3d at 1331.

Count One alleges that correctional officers Farrell, Koropatnicki, Thomas,

Haddock, Ramos, Meyer, and Deanne Adams,[5] Classification Supervisor Ellen Ritten, Administrator Courtney Padgett and Medical Director Jane Jenkins were deliberately indifferent to Hernandez' serious medical need in violation of his constitutional rights. The Individual Defendants do not contest, for present purposes, that Hernandez had a serious medical need, nor do they contest that he suffered an injury (Doc. 153 at 12). But, they argue that "[n]one of the events leading up the June 14, 2012, suicide attempt demonstrate that the Count One Defendants were subjectively aware, to a strong likelihood, that [Hernandez] would attempt to commit suicide, or that the attempted suicide was feasible within the context of his surroundings." (Id., at 19).

Rather than separately alleging the knowledge and conduct of each Individual Defendant, Plaintiff has lumped all of them together and generally averred that: (1) Hernandez had a history of mental issues, including suicidal ideation and self-harm; (2) the Individual Defendants were employees of the County, on duty at the time of the incident; and (3) correctional officers Farrell, Koropatnicki, Thomas, Haddock, Ramos and Meyer were responsible for the supervision of Hernandez at the time of his attempted suicide. From these facts, Plaintiff concludes that these Defendants had "direct knowledge of the existence and contents" of Hernandez' file and, thus, knowledge that he was suicidal. Plaintiff argues: "These individuals, *or some combination of them*, placed Mr. Hernandez, a man with *known suicidal tendencies*, alone in a cell furnished with the instrumentality of his own suicide, and then did absolutely nothing to prevent his preparations and attempt to take his own life." (Doc. 156 at 22, emphasis added). These allegations are insufficient as Plaintiff does not "allege facts that would allow a jury to

---

[5] The parties dispute whether Count One includes a claim against Adams. Due to my conclusion that no claim is stated against any individual defendant, I assume that Adams was meant to be included as a Defendant in this Count.

conclude that the defendant **actually knew** that the plaintiff faced a substantial risk of serious harm" at the pertinent time period. <u>Scott</u> (emphasis added). While Plaintiff may have pled (inartfully) that these Defendants were aware of facts from which an inference *could* be drawn that a substantial risk of serious harm existed (knowledge of the file), Plaintiff does not allege any facts that could support a finding that *each* Individual Defendant actually drew the inference. <u>See</u> <u>Goodman</u>, 718 F.3d at 1332. While inferences from circumstantial evidence can be used to show that a prison official possessed the necessary knowledge, <u>Lane v. Philbin</u>, 835 F.3d 1302, 1308 (11th Cir. 2016), merely being on duty is not enough.

Nor has Plaintiff sufficiently alleged facts showing that *each* Defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. <u>Scott</u>. Plaintiff alleges that after Hernandez was found with a razor and a spoon with a missing handle, Defendants Farrell, Koropatnicki, Thomas, Haddock, Ramos, and Meyer disciplined Hernandez and placed him in an isolation cell. Plaintiff alleges that these officers "knew that Mr. Hernandez required observation for his own safety by placing him in a cell equipped with video surveillance ..." (Doc. 148, ¶ 30). This action is not alleged to be objectively unreasonable, and Plaintiff's allegation implicitly acknowledges as much. It is not the placement of Hernandez in isolation that is the basis of Plaintiff's claim; rather, it is the alleged failure to monitor the cell and prevent the suicide attempt. Plaintiff alleges: "*ORANGE COUNTY and its on-duty staff* either took no steps to monitor OSCAR HERNANDEZ while in isolation or watched as OSCAR HERNANDEZ prepared and attempted to commit suicide over the course of almost thirty (30) minutes, without intervening, in deliberate indifference to OSCAR HERNANDEZ' known high risk of suicide." (<u>Id.</u>) (emphasis added). Crucially, Plaintiff fails to plead any

allegation that *any particular Individual Defendant* had the duty to monitor the cell, knew that there was a significant risk of self-harm if the cell was not monitored, and deliberately (not negligently) disregarded that risk.

Plaintiff simply claims that Hernandez should have been supervised by *somebody*, nobody did, and he was grievously injured as a result. But *ipso facto* allegations of negligence and harm are insufficient to impose liability on individual officers without plausible allegations that the individual officer knew of the risk and deliberately disregarded it. See Dang, 856 F.3d at 853, quoting Farmer v. Brennan, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (finding no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not"); see also Cainion v. Valdosta State Prison, No. 7:15-CV-174 (HL), 2017 WL 1632875, at *11 (M.D. Ga. Apr. 28, 2017) ("Plaintiffs assert general and conclusory allegations that Defendants were negligent in their duties, that the Defendants' negligence, in turn, was deliberate indifference to Cainion's medical needs, and was thus a proximate cause of Cainion's death. However, negligence does not constitute deliberate indifference, nor does it provide a basis for allegations of deliberate indifference to a serious medical need or a delay in response to a medical need."). Plaintiff paints with too broad a brush here. The allegations do not support a claim of deliberate indifference on the part of each Individual Defendant. Considering that Plaintiff has not properly pled the conduct of each Individual Defendant, I conclude that Plaintiff has not shown that the law was clearly established that their conduct in the circumstances amounted to deliberate indifference. Accordingly, I respectfully recommend that Individual Defendants' motion to dismiss be granted as to Count One.

*Supervisory Liability*

Count Two alleges the supervisory liability of Teresa Jacobs, Farrell, Koropatnicki, Thomas, Ritten, Padgett, and Jenkins (the "Count Two Defendants"). The Count Two Defendants argue that Plaintiff has failed to adequately plead any basis for finding them liable for the actions of their subordinates. I agree.

The Eleventh Circuit has stated:

> "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003) (internal quotation marks omitted). Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. Id.
>
>> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.
>
> Id. (internal quotation marks omitted) (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation mark omitted). In short, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (alteration in original) (internal quotation marks omitted).

Keith v. DeKalb Cty., Georgia, 749 F.3d 1034, 1047–48 (11th Cir. 2014). Plaintiff has failed to adequately plead that any subordinate acted with deliberate indifference and therefore, there is no basis for a claim of supervisory liability. See Dang, 856 F. 3d at 853 (quoting Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008) and Beshers v. Harrison, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007)); see also Rossy v. Lupkin, No. 3:14-CV-396-J-34PDB, 2017 WL 2172062, at *9 (M.D. Fla. May 17, 2017). Count Two should be dismissed.

Remaining Matters

Plaintiff's second amended complaint is long on conclusory generalizations and short on clear, specific, factual allegations directed to specific Defendants. As the Court has already schooled Plaintiff's counsel on the requirements of the pleading standard with respect to these claims, these deficiencies are inexplicable. Plaintiff has had sufficient opportunities to state a cognizable claim against Defendants, yet, with the exception of the claims against the County, has not done so. Now, a further opportunity to amend is not warranted.

Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) Orange County's Motion to Dismiss be **DENIED;**

(2) Defendants, Betty Cardona, Latasha McGee and Sandra Lewis' Motion to Dismiss be **GRANTED,** and the claims against them be dismissed without leave to amend;

(3) Defendants, Teresa Jacobs, Deanna Adams, Terry L. Meyer, Gabriel Ramos, Jerry Haddock, Roberta Thomas, Ellen Ritten, Courtney Padgett, Jane Jenkins, Jennifer

Koropatnicki, and Sean Farrell's Motion to Dismiss be **GRANTED**, and the claims against them be dismissed without leave to amend.

(4) Should my recommendations be adopted, the case should proceed solely against the County.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on July 3, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties

- 26 -